THE STATE OF OHIO, APPELLEE, *v.* WILSON, APPELLANT.

(No. CA85-10-080 — Decided April 28, 1986.)

*George E. Pattison,* prosecuting attorney, for appellee.

*D'Anne Uhle,* assistant public defender, for appellant.

*Per Curiam.* This cause came on to be heard upon the appeal from the Court of Common Pleas of Clermont County.

Defendant-appellant, Stanley Wil-

son, voluntarily submitted to a polygraph test for the purpose of determining whether he participated in a breaking and entering in Hamilton County. Prior to the administration of the test, appellant was asked a control question concerning his participation in other crimes. Appellant admitted that he had knowledge of other crimes and, in response to further questioning, admitted participation in two other crimes when he was a juvenile. As a result, appellant was subsequently charged with two counts of breaking and entering, after which the juvenile court waived jurisdiction and appellant was tried as an adult.

Appellant, prior to trial, filed a motion to suppress all statements of appellant and all physical evidence relating to the two counts in the indictment.

At the hearing on the motion to suppress at which appellant was the only witness, the following facts were revealed.

A Loveland police officer told appellant, then eighteen years of age, that he was a suspect in a breaking and entering at the Loveland Library in Hamilton County. Appellant denied knowledge of that incident and the officer asked appellant to take a polygraph examination. Appellant agreed to do so and the officer offered to take appellant to the examination. Two days later, on January 30, 1985, appellant rode to the Hamilton County Courthouse with the officer for the examination.

Prior to the administration of the polygraph test, appellant was read a waiver of rights form which he then signed, attesting to his awareness of his constitutional rights under *Miranda* v. *Arizona* (1966), 384 U.S. 436, 36 O.O. 2d 237. Appellant testified that a second form, which was a lengthy explanation of rights, was explained to him but not read to him; appellant did not read this form before signing it. Appellant testified that he was told this form stated only that the examiner could not be sued if he testified against the appellant.

According to appellant's testimony, the examiner told appellant that if he was aware of any crimes other than breaking and entering of the library, the outcome of the polygraph test might be affected. Then appellant was asked whether he "knew of" any other crimes. Appellant replied that he did know of two crimes, and revealed that he had been involved in two breaking and entering incidents in Clermont County three years before. Appellant also testified that, at some point during the examination, he wished to remove the test wires from his body but was asked to leave them on and to complete the test. At the conclusion of the examination, appellant returned to his home.

The trial court overruled the motion to suppress, holding that there was no evidence that appellant was in custody, that appellant should have read the second sheet before signing it, and that there was no coercion. Subsequently, appellant entered a plea of no contest to the charge against him, and was convicted of both counts of breaking and entering.

Appellant timely brings this appeal naming the following two assignments of error:

Assignment of Error No. 1:

"The trial court erred to the substantial prejudice of the defendant-appellant by overruling defendant's motion to suppress his confession made during a polygraph examination where the defendant was not made aware that he was going to be asked questions concerning his knowledge of other crimes and he did not knowingly, intelligently or voluntarily waive his *Miranda* rights with respect to these other crimes."

Assignment of Error No. 2:

"The trial court erred to the substantial prejudice of the defendant-appellant by overruling the defendant-appellant's motion to suppress his confession made during a polygraph exam-

ination where the prosecution failed to prove by the preponderance of the evidence that the confession was voluntary."

Appellant argues under his first assignment of error that since he was not advised of his constitutional rights with respect to crimes other than that for which he knew he was to be examined, he could not have knowingly, intelligently, or willingly waived those rights as applied specifically to those crimes. Further, appellant argues that since he wanted to clear himself of the crime for which he was taking the polygraph examination, and since he was told that the only way the examination would be effective would be if he answered the control question, he was being coerced into answering questions about the old crimes.

Appellee argues in response that since appellant voluntarily appeared for the polygraph examination, his confession to the two Clermont County crimes was in a non-custodial setting and therefore not subject to suppression.

The issue to be decided is whether, after asking whether appellant "knew of any other crimes," the examiner could properly continue questioning without reminding appellant of his rights with respect to those crimes. The trial court ruled that Wilson's statements to the polygraph operator should not be suppressed, as there was no *Miranda* violation. We disagree.

In *Miranda, supra,* at 444, 36 O.O. 2d at 241, the Supreme Court held that:

"* * * the prosecution may not use statements * * * stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way."

Thus, the first question that must be confronted when determining whether there was a *Miranda* violation is whether appellant was in custody or otherwise deprived of his freedom of movement in any significant way. The only relevant inquiry bearing on whether he was "in custody" is "how a reasonable man in the suspect's position would have understood his situation." *Berkemer* v. *McCarty* (1984), 468 U.S. 420.

During the suppression hearing, appellant testified that he voluntarily went with the police officers to take the polygraph exam, and that he was not placed under arrest after the exam's conclusion. Certainly, these factors are relevant circumstances in our determination. In *Oregon* v. *Mathiason* (1977), 429 U.S. 492, the court held that a suspect who went voluntarily to the police station, where he was immediately informed that he was not under arrest, and who left the police station at the close of a short interview in which he confessed, was not in custody " 'or otherwise deprived of his freedom in any significant way.' " *Mathiason, supra,* at 495.

However, in the case *sub judice,* additional factors were present: appellant's uncontroverted testimony shows that at some point before or during the examination he was going to remove the polygraph wires from his body but the examiner told him not to do so and asked him to finish the test. At that point, the eighteen-year-old appellant, who had had no prior experience with the police as an adult, could reasonably believe he was not free to go. Indeed, it appears that at this point at least he was *in fact* not free to go. After all, appellant was driven to the exam in a police cruiser, the examiner himself thought it necessary to inform appellant of his *Miranda* rights before the exam, appellant had been urged by the police to take this exam to clear himself of the crime of which he was originally a suspect, and he was

told that the only way the exam would be effective was by his answering the control question truthfully. Under such circumstances, it can certainly be said that the police intended appellant to remain in their physical control, at least until the examination's conclusion. Thus, appellant was "deprived of his freedom in a significant way," and was therefore exposed to the subtle coercion which the *Miranda* court sought to avoid.

It appears from the record that appellant was informed of his constitutional rights in some manner before he was interrogated. However, it is also clear that he should have been warned again of those rights before he was questioned about crimes other than that which was the original subject of the exam. Assuming, *arguendo,* that appellant's original written waiver of those rights was valid, that waiver could only have been effective in this case for the crime for which appellant knew he would be questioned, for an effective waiver must be voluntary, knowing and intelligent and found to be so under the totality of the circumstances. *Miranda, supra,* at 475 (citing *Escobedo* v. *Illinois* [1964], 378 U.S. 478, 490, 32 O.O. 2d 31, 36, fn. 14.) Appellant's written waiver could not have been knowing and intelligent with respect to the Clermont County crimes because he did not know that he would be asked about those crimes.

Further, although he was informed after having been warned of his rights that he was to be asked whether he "knew of any other crimes," it was inferred that the control question, which was obviously likely to invite an incriminating response, was being asked *only* as a control for the test, not as a prelude for further interrogation on the response. Therefore, appellant was misled to believe that his answer to the control question would not be used against him. That the appellant was deceived into responding to questions about the Clermont County crimes "render[s] the waiver decision involuntary." *State* v. *Edwards* (1976), 49 Ohio St. 2d 31, 39, 3 O.O. 3d 18, 23, 358 N.E. 2d 1051, 1058.

Generally, evidence obtained through prior illegality is inadmissible against an appellant. See, *e.g., Wong Sun* v. *United States* (1963), 371 U.S. 471. Since there is nothing in the record below to indicate that evidence linking appellant to the two Clermont County crimes was gained from a source other than appellant's illegally obtained confession, that evidence may not be used against appellant.

Accordingly, the court below was in error in overruling appellant's motion to suppress the statements elicited by the polygraph examiner and appellant's first assignment of error is sustained.

In view of our response to appellant's first assignment of error, we find appellant's second assignment of error moot and therefore decline to respond to the same.

The assignments of error properly before this court having been ruled upon as heretofore set forth, it is the order of this court that the judgment herein appealed from be, and the same hereby is, reversed and appellant is discharged.

*Judgment reversed*
*and defendant discharged.*

KOEHLER, P.J., JONES and HENDRICKSON, JJ., concur.