**State v. Rutter**
*[Cite as 5 AOA 322]*

*Case No. 3967*
*Trumbull County, (11th)*
*Decided July 13, 1990*

*Dennis Watkins, County Prosecutor, Patricia L. Spencer, Assistant County Prosecutor, 160 High Street, N.W., Warren, Ohio 44481, for Plaintiff-Appellee.*

*Randall M. Dana, Charles A. Ziegler, Ohio Public Defender Commission, 328 Mahoning Avenue, Warren, Ohio 44483, for Defendant-Appellant.*

MAHONEY, J.

On June 1, 1987, defendant-appellant, David Rutter, was indicted on seven counts of rape with a firearm specification, in violation of R.C. 2907.02(A) (2) and R.C. 2941.141; one count of illegal use of minor in nudity-oriented material/performance with a firearm specification, in violation of R.C. 2907.323(A)(2) and R.C. 2941.141; one count of felonious sexual penetration with a firearm specification, in violation of R.C. 2907.12(A)(2) and R.C. 2941.141; one count of endangering children, in violation of R.C. 2919.22(A); and one count of furnishing intoxicating liquor to a person under the age of twenty-one, in violation of R.C. 4301.69. These charges arose from appellant's sexual activity with his minor daughter, Darlene Rutter.

On August 6, 1987, the appellant filed a motion to suppress evidence. A suppression hearing was held by the court on September 3, 1987 in which Sgt. Hark Massucci of the Warren Police Department and Sue Ellen Stinedurf testified for the state. Both Massucci and Stinedurf testified that they went to appellants residence on May 22, 1987 to execute an arrest warrant and conduct a search of his residence.

Immediately upon the arrival at appellant's residence, Sgt. Massucci advised appellant that be had a warrant for his arrest. Appellant permitted Sgt. Massucci and Ms. Stinedurf to enter his residence. Appellant read the arrest warrant and asked if he could call his attorney. Sgt. Massucci then read appellant his rights and had him execute the constitutional rights form.

Appellant was allowed to contact his attorney, and he tried numerous times to reach him but was unsuccessful. Sgt. Massucci even suggested to appellant some places where his attorney might be found. Although Ms. Stinedurf had in her possession a valid search warrant, she did not execute it but returned the warrant unserved. Instead, Sgt. Massucci asked for appellant's consent to search the premises. Appellant gave permission after reading and executing a consent to search form. Appellant again tried to contact his attorney but was unsuccessful. Appellant then took Sgt. Massucci and Ms. Stinedurf through his house and cooperated in gathering I the items which were seized.

Appellant's motion to suppress certain items seized was overruled by the trial court, and these items were eventually admitted into evidence.

At trial, a polygraph examiner testified about admissions appellant made during the pretest interview stage of the polygraph examination. The admissions were about appellants sexual contact with another daughter. Defense counsel objected to this testimony, arguing that it was outside of the scope of the stipulated polygraph subject matter. The trial court overruled the objection.

After a trial by jury, appellant was convicted of six counts of rape, one count of felonious sexual penetration, one count of child endangering, and one count of illegal use of minor in nudity-oriented material/performance. The appellant was sentenced on all counts, with the sentences amounting to a total minimum of forty years and a total maximum of one hundred years.

Appellant filed a timely appeal, setting forth the following assignments of error:

"1. The trial court committed reversible error in failing to suppress items seized in the warrantless search of appellant's residence after appellant requested advice of counsel.

"2. Appellant's Fifth Amendment privilege against self-incrimination and Sixth Amendment right to counsel were violated when the State of Ohio used evidence of sexual activity against him which was outside the scope of the stipulated polygraph.

"3. Appellant was sentenced in violation of Ohio Revised Code 2929.41(E)."

In his first assignment of error, appellant argues that the trial court erred in failing to suppress items seized in the warrantless search of appellant's residence after he requested advice of counsel.

Appellant argues that he attempted to contact his attorney prior to giving a written consent for the search. Appellant argues that Sgt. Massucci and Ms. Stinedurf were aware of his efforts to contact his attorney. When appellant realized that he was unable to contact his attor-

ney, appellant claims that the state "was able to induce" him to give written consent to search.

Appellant argues that this consent was obtained in violation of his right to counsel under the Fifth and Fourteenth Amendments to the U.S. Constitution. In essence, appellant maintains that, when he asked to call his attorney, the questioning should have stopped and the state should not have asked him if he would consent to the search. In support of his argument, appellant cites *Edwards v. Arizona*, (1981), 451 U.S. 477, in which the U.S. Supreme Court held that once the defendant "invokes his right to counsel, the accused may not be subjected to further interrogation until counsel is made available unless he himself initiates the further communication."

Appellant's argument is not persuasive.

In *State v. Childress* (1983), 4 Ohio St. 3d 217, certiorari denied (1983), 464 U.S. 853, the Ohio Supreme Court, in distinguishing Edwards, held in the syllabus:

"1. In order to waive his Fourth Amendment privilege against unreasonable searches and seizures, the accused must give a consent which is voluntary under the totality of all the surrounding circumstances. (*Schneckloth v. Bustamonte*, 412 U.S. 218, followed.)

"2. It is permissible for law enforcement officials to seek a waiver of the accused's Fourth Amendment rights even after he has invoked his right to counsel. (*Edwards v. Arizona*, 451 U.S. 477, distinguished.)"

Thus, the Ohio Supreme Court distinguished the Fifth Amendment right as expressed in *Edwards v. Arizona, supra.* from the Fourth Amendment right against unreasonable searches and seizures. The standard to be applied to Fourth Amendment rights is the "totality of the circumstances" as set forth in *Schneckloth v. Bustamonte* (1973), 412 U.S. 218. Thus, under Childress and the principles cited *infra*, the state was permitted to seek consent to search the premises even after appellant attempted to contact his attorney. Furthermore, applying the Schneckloth totality of the circumstances standard, appellant's actions in signing the written consent search form and retrieving the items that Sgt. Massucci requested, as well as his testimony at trial, clearly show that appellant knowingly and voluntarily consented to the search of his residence.

The trial court properly admitted the items seized and, thus, appellant's first assignment of error is without merit.

In his second assignment of error, appellant argues that his Fifth Amendment privilege against self-incrimination and Sixth Amendment right to counsel were violated when the state used evidence of sexual activity against him which was outside the scope of the stipulated polygraph.

Appellant requested to tale a polygraph test and agreed to have the results of the test admitted as evidence pursuant to the stipulations contained in the "Entry of Stipulation of Use of Polygraph."

Appellant stipulated, in part, to the following:

"1. The witness will submit to an examination process utilizing in part, a device comonly (sic) known as a 'polygraph' or 'lie detector,' which examination process may involve a series of interviews and tests employing such device.
"***

"4. Such person or persons designated by counsel for the State of Ohio shall be permitted if called as a witness by the State of Ohio to testify at trial of this cause as an 'expert' regarding all aspects of the test administered, and such testimony shall be offered and received as evidence in the trial of this cause without objections of any kind by any party to this agreement except as to the weight of evidence it is to be given.

"***

"7. Prior to signing this Entry, and agreeing thereby to submit to 'polygraph testing,' the witness has been fully advised of his constitutional and statutory rights, and by signing this Entry, he knowingly, intelligently, and voluntarily waives his right to remain silent and his right to seek advice of counsel during any stage of the administration of the polygraph test procedure. Admissions or other culpatory statements made by the defendant during 'testing' shall be admissible and may be testified to during the trial of this case.

"***

"10. It is further understood, in keeping with normal testing procedure, that the polygraph examiner will hold in confidence any admissions or statements made by the defendant which pertain to matters not under investigation.
"***"

Bill Evans, the polygraph examiner, conducted a pretest interview in which appellant admitted to sexual activity with his other daughter, Denise Flutter.

On direct examination by the State of Ohio, William Donald Evans, II, the polygraph examiner, stated:

"\*\*\*

"A. Well, during the pre-test interview we talked about any type of sexual misconduct with Darleen (sic) or his other daughter, Denise, and the pre-test interview as it evolved, he made a statement to me regarding sexual misconduct with his natural daughter Denise firstly. That statement was at age 14 he fondled her vaginal and breast areas and nearly had intercourse with --"

"\*\*\*"

Defense counsel interjected an objection, which was overruled by the trial court; however, no further testimony was offered by the polygraph-examiner concerning appellant's relationship with Denise Flutter.

Citing *State v. Souel* (1978), 53 Ohio St. 2d 123, appellant concedes that stipulated polygraph examinations are admissible as evidence at trial for the purposes of impeachment and corroboration. However, he argues that the evidence admitted against him went beyond his waiver of Fifth and Sixth Amendment rights contained in the stipulations.

Appellant cites *State v. Wilson* (1986), 31 Ohio App. 3d 133, where a defendant who signed a waiver of his rights prior to taking the polygraph was questioned about other crimes which were not the subject of the original test. In *Wilson*, the court reversed the conviction and held that the defendant should have been informed of his rights prior to being questioned about other crimes. The court stated that defendant's written waiver was invalid as to the other crimes I because the defendant did not know he was going to be questioned about the other crimes and, thus, the waiver was not "voluntary, knowing, and intelligent." *Id*. at 136.

The case *sub judice* is distinguishable from *Wilson, supra.* Defendant Wilson was subsequently charged and convicted of the other crimes that he admitted to in the polygraph without being separately informed of his rights. However, appellant was not charged or convicted of any crime involving sexual activity with his daughter Denise. Appellant's admissions regarding his daughter Denise were admissible under paragraphs four and seven of the polygraph stipulations.

Furthermore, unlike defendant Wilson, the record shows that appellant was not coerced or restrained in any way during the polygraph but was free to leave at any time. Appellant requested to take the polygraph, arrived on his Own at the prosecutor's office to take the test, was permitted to leave the test to go unaccompanied to the bathroom which was in another part of the building, and was allowed to leave after the test was complete.

At the end of the test, appellant signed a standard waiver form which provided that appellant freely and knowingly submitted to the test and was free to leave at any time. Therefore, *Wilson* is distinguishable from the facts *sub judice* and, thus, is not applicable or controlling.

Next, appellant claims that the admission of evidence of his sexual activity with his other daughter, Denise, breached paragraph ten of the polygraph stipulations. Although the state alleges that appellant knew that his sexual conduct with both of his daughters was under investigation, the state fails to provide any evidence of appellant's knowledge or that both matters were under investigation. However, it is clear that appellant was only charged for his sexual activity with his daughter Darlene.

Assuming *arguendo* that paragraph ten was breached by the polygraph examiner, such breach constitutes harmless error. It is well settled that:

"Error in the admission of evidence in criminal proceedings is harmless if there is no reasonable possibility that the evidence may have contributed to the accused's conviction. In order to hold the error harmless, the court must be able to declare a belief that the error was harmless beyond a reasonable doubt." (Crim. R. 33[E][4]; Crim. P. 52(A); *Chapman v. California*, 386 U.S. 18.) *State v. Bayless* (1976), 48 Ohio St. 2d 73, paragraph seven of the syllabus.

In *State v. Williams* (1983), 6 Ohio St. 3d 281, 290, the court held:

"\*\*\* Where evidence has been improperly admitted in derogation of a criminal defendant's constitutional rights, the admission is harmless 'beyond a reasonable doubt' if the remaining evidence alone comprises 'overwhelming' proof of defendant's guilt. *Harrington v. California* (1969), 395, U.S. 250, 254. \*\*\*"

The record shows that, even without the appellant's admission of his sexual activity with his daughter Denise, there is overwhelming proof that defendant is guilty of the crimes he was convicted of committing on his daughter, Darlene.

The record reflects that appellant admitted to Sgt. Mark A. Massucci of the Warren Police

Department, William Evans, the polygraph examiner, and his sister, Nancy Staton, that he engaged in sexual intercourse with his daughter, Darlene Rutter, on numerous occasions; however, he denied the use of force. Likewise, at trial, the appellant admitted to having intercourse with his daughter, Darlene, on numerous occasions but again denied the use of force.

Darlene Rutter testified at length concerning appellant's use of various types of force and threats of force to compel her to submit to repeated acts of sexual intercourse, one act of fellatio, the taking of nude photographs of her, and compelling her to drink wine on one occasion.

Thus, even if there was error, it was harmless error beyond a reasonable doubt; therefore, appellant's second assignment of error is without merit.

In the third assignment of error, appellant contends that he was sentenced in violation of R.C. 2929.41(E).

Former R.C. 2929.41(E)(2), now (E)(3), provides in part:

"Consecutive terms of imprisonment imposed shall not exceed:

"***

"2. An aggregate minimum term of fifteen years, when the consecutive terms imposed are for felonies other than aggravated murder or murder."

Appellant's total minimum sentence is forty years and total maximum sentence is one hundred years. Appellant contends that his sentencing is contrary to law and must be reversed and remanded pursuant to R.C. 2929.41. Appellant's argument must be rejected.

In *State v. White* (1985), 18 Ohio St. 3d 340, the Supreme Court held that:

"*** where a trial court's sentence exceeds the minimum established for consecutive terms, such judgment is not the basis of a reversible error, as the terms of former R.C. 2929.41 (E)(2), now (E)(3), are self-executing, automatically operating to limit the aggregate minimum sentencing term to fifteen years. See *State v. Slider* (1980), 70 Ohio App. 2d 283 [24 O.O. 3d 387]; *State v. Maynard* (June 24, 1976), Franklin App. No. 75 AP-676, unreported." *Id.* at 341-342. See, also, *State v. Hughley* (1984), 20 Ohio App. 3d 77.

Accordingly, appellant's third assignment of error is without merit.

For the reasons stated herein, appellant's assignments of error are without merit, and the decision of the trial court is affirmed.

*Judgment affirmed.*

CHRISTLEY, P.J., concurs with concurring opinion.

FORD, J., concurs with concurring opinion.

CHRISTLEY, P.J.

I agree with the conclusion of the authority regarding the second assignment: "to-wit: that it is harmless error based on the existence of other compelling evidence." *State v. Gordan* (Apr. 3, 1989), Geauga App. No. 1410, unreported. However, I would like to note that I do not feel that the United States Supreme Court in *Wyrick v. Fields* (1982) 459 U.S. 42, can be cited for the proposition that any statement made to the polygraph examiner before or after the polygraph machine was actually operating would be admissible regardless of polygraph stipulations. The facts in *Wyrick* do not indicate that any such stipulations were present. Therefore, we can not speculate as to what that court would have done had there been specific stipulations present such as we find in the instant case. Further, it would seem implicit that any stipulations entered into regarding the ways in which the results of the polygraph can be used must be construed in the defendant's favor if there is ambiguity since they are essentially serving as a waiver of his rights under the circumstances.

In the instant case it is not clear whether the stipulations are applicable only to the statements made during the actual "hook-up" of the polygraph test or whether the stipulations apply to the entire polygraph process. That would include the pretest dialogue which is basically standard procedure in any polygraph scenario; likewise, the post-test dialogue with the examiner in which explanations to "inconsistencies" are sought by the examiner is *de rigueur* and would be considered by most law enforcement people to be part and parcel of the entire polygraph procedure.

I am extremely reluctant to conclude that stipulations concerning the use of evidence obtained during any part of the polygraph process must be limited to the actual test itself unless that is what the stipulation specifically provides.

Fortunately, I am in agreement with the majority that there is more than sufficient evidence to otherwise implicate appellant.

Therefore, I concur.

FORD, J.

Recently, this jurist, in writing for the court in *State v. Gordon* (Apr. 3, 1989), Geauga App. No. 1410, unreported, noted the recent trend by sister jurisdictions to prohibit the use of polygraph examinations in criminal proceedings.

"*** [S]ince *[State v. Valdez* (1962), 371 P. 2d 894], the admissibility of the results of the polygraph examinations have been the subject of judicial review in a number of jurisdictions Courts that originally adopted the *Valdez* criteria have subsequently overruled those decisions prohibiting the use of the polygraph results.

"More specifically, the Wisconsin Supreme Court. in *State v. Dean* (1981), 103 Wis. 2d 228, 307 N.W.2d 628, held:

"'*** it is error for a trial court to admit polygraph evidence in a criminal proceeding ***' *Dean, supra,* at 307 N.W. 2d at 653.

"In *Dean,* the court expressly overruled *State v. Stanislawski* (1974), 62 Wis. 2d 730, 216 N. W. 2d 8, which adopted the conditions set forth in *Valdez.* In *Dean,* the court noted:

"The *Stanislawski* rule which appeared in 1974 to be a reasonable compromise between unconditional admission of and unconditional rejection of polygraph evidence does not appear at this time to be the satisfactory compromise, and we decline to continue to permit the admission of polygraph evidence pursuant to the rule set forth in *Stanislawski.*

"We also reject the alternative of awaiting continued refinement of the *Stanislawski* rule on a case-by-case method. Adequate standards have not developed in the seven years since *Stanislawski* to guide the trial courts in exercising their discretion in the admission of polygraph evidence. The lack of such standards heightens our concern that the burden on the trial court to assess the reliability of stipulated polygraph evidence may outweigh any probative value the evidence may have.' *Id.*

"The court based its decision upon the fact *** that the legal and scientific communities remain significantly divided on the reliability of the polygraph in a criminal case." *Id.* at 632. Clearly, courts are again questioning the reliability of the polygraph, and are beginning to prohibit its use even with the *Valdez* stipulation. (For a complete listing of states which have refused to accept t he polygraph notwithstanding a *Valdez* stipulation see Annotation (1979, Supp. 1983), 53 A.L.R. 3d 1005, section 3, p. 153-4 of supplement.)"

The facts in this cause only act to fan the embers which challenge the use of the so-called lie detector.

The courts have long recognized the potential prejudicial impact of evidential submission based upon this machine. This concern was the obvious source for the judicially adopted balancing safeguards which have served as the predicate for the operator's opinion. Unfortunately, these protections frequently pro vi de only a mild prophylactic effect and often are the catalyst for a confession under the guise of a pre-examination or post-examination statement, which is not subject to limitation or suppression by the stipulation.

In this cause, the polygrapher testified that he had a lengthy discussion with the appellant. However, that conversation was not conducted while appellant was attached to the machine. As such, any statement which he made, "in order to develop a rapport" between the examiner and the appellant, was not subject to the strict dictates of the stipulation.

This jurist has become all too familiar with the use of this appearance of developing a rapport with the examinee to obtain incriminating statements. The examiner will often broach the topic within the focus of the inquiry during the pre-examination.

The questions delve into areas which the stipulation expressly prohibits, but since the inquisition is prior to the accused being "hooked-up" to the machine, such conversations are not taboo. In *Wyrick v. Fields* (1982), 459 U.S. 42, the court held such statements are admissible. I find such backdoor confession tactics unacceptable in light of a stipulation which expressly prohibits such questioning during the examination. However, I reluctantly must follow the pronouncement of the "August Seven" which permits the use of polygraphs when a proper stipulation has been executed to *State v. Souel* (1978), 53 Ohio St. 2d 123.

With this predicate in mind, I note that I concur with the majority's assessment that the statements made by the polygraph's examiner amounted to "harmless error." As noted in *Gordon, supra,* at 20, such analysis is appropriate:

"In *United States v. Morrow* (C.A. 4, 1984), 731 F. 2d 233, the court analyzed this issue with respect to the use of the results of a lie detector test. In *Morrow, supra,* the court found that 'the admission of the polygraph evidence constituted,

at most, harmless error' because of the other compelling evidence."

As the majority correctly notes, there is more than sufficient other evidence implicating appellant.

Therefore, based upon *Souel* and *Morrow*, *supra*, I concur.