[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION
Gerald K. Smith (Smith), appeals from the judgment entered upon a jury verdict in the Allen County Court of Common Pleas convicting him of Aggravated Murder, charged under R.C. 2903.01(B), and Aggravated Robbery charged under R.C. 2911.01(A)(1), both offenses with firearm specifications pursuant to R.C. 2941.145(A).
On August 21, 1996, Kevin Little was killed in his Lima, Ohio residence by multiple gun shot wounds. Smith was initially charged with Complicity to Aggravated Murder. Counsel was appointed by the Lima Municipal Court and Smith waived preliminary hearing. Smith, accompanied by counsel, requested to take a polygraph examination and such was administered by Detective Danny Thompson of the Allen County Sheriff's Department.
It is undisputed that prior to administering Smith's polygraph exam, Detective Thompson, in the presence of Smith's attorney, advised Smith that anything he said could be used against him and read to him his Miranda rights as set forth inMiranda v. Arizona (1966), 384 U.S. 436, 86 S.Ct. 1602,16 L.Ed.2d 694. Further, Smith initialed his Miranda rights form and also signed a polygraph consent and release form. At hearing on motion to suppress statements relating to the polygraph examination, Detective Thompson recalled that Smith asked about the effect of the examination and was informed that, "anything he said could be used against him, but the results of the polygraph examination could not be."
Before any exam questions were posed to Smith, Detective Thompson asked Smith to describe his version of events on the day Kevin Little was killed. Detective Thompson explained that in order to conduct a proper polygraph examination it was necessary to know what Smith's claim was before he could test the claim's veracity. However, during the preliminary questioning, Smith made statements to Detective Thompson incriminating himself.
Smith told the examiner that on the evening prior to August 21, 1996, he was robbed by Little and had tried to shoot Little then but his gun malfunctioned. The following day, Smith said that he, along with two other men, "D" (Marcus Thurman) and "J" (Lee Edwards), drove to Little's residence. Smith admitted his intent was to take something valuable from Little as payback for the robbery the night before. Smith recalled that while Thurman waited in the car, he and Edwards entered Little's apartment. Though Smith admitted he entered the residence armed with a gun, he claimed he did not shoot Little. Smith, instead, claimed that while he was looking for something to steal, Edwards found Little and shot him repeatedly.
Smith told Detective Thompson that he refused to shoot Little despite Edwards' encouragement that Smith should do so also. A police ballistics investigation indicated that two separate firearms were discharged in the Little residence during the homicide. No weapon was found in Little's possession. Marcus Thurman, a convicted accomplice in the Aggravated Robbery, testified at trial that after hearing two different firearms being discharged from Little's apartment building, he observed Smith and Edwards jogging from the building to his car. Thurman stated that after the two men returned to his vehicle, Smith admitted to him that he had shot Little.
The trial court overruled Smith's motion to suppress and, over objections at trial, admitted Smith's statements to Detective Thompson. Smith now appeals from his conviction.
Smith raises two assignments of error.
 I. The trial court committed an error of law in denying the motion to suppress the pretest statement from the unstipulated polygraph examination.
 II. The defendant-appellant was denied effective assistance of counsel.
 I.
In Smith's first assignment he argues his preliminary statements to a police polygraph examiner were improperly admitted in evidence against him as they were elicited as part of an unstipulated polygraph examination. Smith cites State v. Souel
(1978), 53 Ohio St.2d 123, 372 N.E.2d 1318, in support of this proposition. Smith's argument is without merit.
 Souel defines an unstipulated polygraph examination as merely an exam where the parties make no express agreement as to the evidentiary use of its results. Souel, 53 Ohio St.2d 123,372 N.E.2d 1318. Souel stands for the rule that where no express stipulation is present, the results of a polygraph test are inadmissible in a later trial. Id. The Souel decision is limited, however, to "[t]he results of a polygraph examination."Id. at 129, 372 N.E.2d at 1321 (emphasis added).
Here, both the state and Smith agree that the results of the polygraph exam were never contemplated to be or offered as admissible evidence against Smith. Further, there is no indication in the record the state ever attempted to use the results of the test against Smith. Therefore, the principal established in Souel
is irrelevant to the circumstances here. Id.
Smith also contends the trial court erred by not suppressing his statements because his admissions were coerced. Smith argues that because a polygraph "examinee must respond truthfully to the control questions," the use of such control questions under the guise of conducting a polygraph exam "improperly coerce[s] confessions by eliciting incriminating responses to pretest inquir[es]." Smith urges our consideration of State v. Wilson
(1986), 31 Ohio App.3d 133, 508 N.E.2d 1002. This proposition is without merit.
 First, Smith was simply asked by Detective Thompson "what actually happened that day . . . August 21, 1996?" (Court Ex. AA). Such an inquiry is not akin to the "control question" asked inState v. Wilson where control questions were identified as those which purportedly control for false negative results. Id. at 136,508 N.E.2d at 1005. For instance, in Wilson, the examiner asked the suspect whether there were any other crimes weighing on his conscious that may affect the exam's results. Id.
The questioning here is clearly distinguishable. Detective Thompson testified that his preliminary inquiry of Smith was necessary to learn exactly what Smith's version of events was, otherwise he would have been forced to test the veracity of an unknown position. Such an inquiry is in no way comparable to the coercive tactics identified in Wilson. Id.
Nevertheless, even if the administration of this test was an investigative technique designed to elicit an incriminating response from Smith, when Smith decided to voluntarily take this test, after being informed in the presence of counsel that anything he said could be used against him, he proceeded at his own peril. The right to decide not to speak would indeed be hollow if one were forbidden the opportunity to choose to speak. Without evidence of police coercion, Smith has no basis to claim his statement was involuntary given. State v. Phillips (1995),74 Ohio St.3d 72, 96, 656 N.E.2d 642, 666 (where confession was determined voluntary when, under the totality of the circumstances, there was no evidence "police used inherently coercive tactics" to elicit an incriminating statement); seealso, State v. Tucker (1998), 81 Ohio St.3d 431,436,692 N.E.2d 171, 175.
As Smith was given appropriate Constitutional warnings, but chose nonetheless to state his version of events surrounding the murder of Kevin Little, his statements were properly admitted and his motion to suppress was properly denied.
Smith's first assignment of error is overruled.
 II.
In Smith's second assignment, he claims he was denied effective assistance of counsel. The burden of showing ineffective assistance of counsel is on the defendant. State v.Smith (1985), 17 Ohio St.3d 98, 477 N.E.2d 1128.
 First, the defendant must show that counsel's performance was deficient. This requires showing counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.
State v. Davis (Mar. 2, 1994), Seneca App. No 13-93-24, *2, unreported, quoting Strickland v. Washington, (1984),466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674, (emphasis theirs). There also is a "strong presumption" that counsel's performance was reasonably professional. State v. Cook (1992), 65 Ohio St.3d 516,524, 605 N.E.2d 70, 81.
First, Smith argues that his appointed counsel, Mr. Benavidez, performed deficiently to his prejudice by permitting him to take a polygraph during which he made incriminating statements. There is, however, no indication in the record that Mr. Benavidez advised Smith to take a polygraph examination. Mr. Benavidez was called as a witness at the suppression hearing, but refused to answer any questions concerning his discussions with Smith unless Smith expressly waived his attorney/client privilege. Smith refused to waive his privilege and Benavidez was asked no questions concerning their conversations.
Accordingly, without any evidence as to the conduct of counsel, neither we nor the trial judge may conclude that Smith took the exam based on the advice of counsel. An absence of evidence proves nothing about the effectiveness of counsel.Smith, 17 Ohio St.3d at 100, 477 N.E.2d 1128.
Finally, Smith claims that Mr. Benavidez performed deficiently because he advised him that his statements could not be used against him. Smith's second contention, however, is unsupported by any evidence and therefore also fails to overcome his evidentiary burden. Id.
Detective Thompson testified that both he and Smith's attorney advised Smith that an unstipulated polygraph meant that "anything he said could be used against him, but the results of the polygraph examination could not be." Smith, also testified at the suppression hearing and admitted he was advised of his Miranda
rights, signed a consent and release stating that he requested to take the polygraph, and that he initialed the Miranda rights form. Further, the trial judge reminded Smith that, by refusing to waive his attorney/client privilege, Mr. Benavidez was unable "to substantiate or not substantiate" Smith's claim that he was advised his statements could not be used against him. Smith, nevertheless, exercised the privilege.
Based on this record, Smith has failed to overcome the "strong presumption" that his counsel performed effectively.Cook, 65 Ohio St.3d at 524, 605 N.E.2d at 81; Smith,17 Ohio St.3d at 100, 477 N.E.2d 1128; and,Strickland, 466 U.S. 668, 687,80 L.Ed.2d 674, 104 S.Ct. 2052. Accordingly, Smith's second assignment of error is overruled.
Judgment Affirmed.
HADLEY and EVANS, JJ., concur.