DECISION AND JUDGMENT ENTRY
This is an appeal from a judgment of the Lucas County Court of Common Pleas which denied the motion to suppress filed by appellant, Anthony Callaway, and sentenced him to a period of twenty-four months on one count of possession of crack cocaine. For the reasons stated herein, this court reverses the judgment of the trial court.
Appellant sets forth the following assignment of error:
 "THE TRIAL COURT ERRED WHEN IT DENIED DEFENDANT-APPELLANT'S MOTION TO SUPPRESS IN VIOLATION OF HIS RIGHTS UNDER THE OHIO AND U.S. CONSTITUTION. [SIC]."
The following facts are relevant to this appeal. At the hearing on the motion to suppress, two Toledo police officers testified. The first officer testified that she, her partner and a sergeant responded to a complaint regarding loitering at 1:30 a.m. in one of the heaviest drug areas in her district. She testified that she observed two people standing outside a white car when she arrived at the scene. After talking with the two people standing outside the car, she observed appellant and another individual in the car, "trying to be very inconspicuous." She asked them to step outside the car and they were patted down. She stated that the reason appellant and the other individual were patted down was:
 "They were sitting in the car, we had probably been there a good two minutes, and not made themselves known and made me nervous. It's — I don't — like that."
This officer testified further that appellant was sitting slumped in his seat, without any movement.
The second officer, a sergeant with seventeen years experience, testified that appellant was not seated slumped down but was sitting up like a statue in the car that was legally parked. This officer admitted on cross-examination that there were no facts that led him to believe that appellant was involved in any illegal activity. This officer testified that he asked appellant to get out of the car and then he patted appellant down for weapons for the officers' safety. During the pat down, the officer felt a lump at appellant's waistband which was later determined to be a baggie of crack cocaine. Appellant was arrested.
The owner of the car appellant was sitting in also testified. The owner testified that appellant was a friend of the man's nephew and appellant was sitting in the car because appellant wanted a ride.
The trial court denied appellant's motion to suppress. Appellant entered a plea of no contest and was sentenced to two years incarceration. Appellant filed a timely notice of appeal.
In his assignment of error, appellant argues that the trial court erred in denying his motion to suppress. This court finds merit in appellant's assignment of error.
A trial court assumes the role of the trier of fact and, therefore, is in the best position to resolve factual questions and evaluate the credibility of a witness when considering a motion to suppress. State v. Mills (1992), 62 Ohio St.3d 357,366. When reviewing a trial court's ruling on a motion to suppress, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. State v. Guysinger (1993), 86 Ohio App.3d 592, 594. An appellate court must independently determine as a matter of law, without deferring to the trial court's conclusions, whether the facts meet the applicable legal standard. State v. Klein (1991),73 Ohio App.3d 486, 488.
Both the Ohio and the United States Constitutions protect individuals from unreasonable searches and seizures. TheFourth Amendment to the United States Constitution; Section 10, Article I, Ohio Constitution. In a series of cases, the United States Supreme Court has set forth the constitutional requirements and safeguards of the Fourth Amendment in regard to an investigative stop[1] by a police officer. In order to warrant a brief investigatory stop, the police officer involved "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Terry v. Ohio (1968),392 U.S. 1, 21. The determination of whether a stop is warranted depends on whether, considering the totality of the circumstances, the officer had an objective and particularized suspicion that, "* * * criminal activity was afoot." State v. Andrews (1991),57 Ohio St.3d 86, 87. Such an investigatory stop "must be viewed in light of the totality of the surrounding circumstances" presented to the police officer. State v. Freeman (1980), 64 Ohio St.2d 291, paragraph one of the syllabus. The standard for reviewing such police conduct is an objective one: "would the facts available to the officer at the moment of the seizure or the search `warrant a man of reasonable caution in the belief' that the action taken was appropriate?" Terry, supra, at 21-22; UnitedStates v. Wright (C.A. 8, 1977), 565 F.2d 486, 489.
A police officer may not rely on good faith and inarticulate hunches to meet the Terry standard of reasonable suspicion. United States v. Poitier (C.A.8, 1987), 818 F.2d 679,683, certiorari denied (1988), 484 U.S. 1006. In Brown v. Texas
(1979), 443 U.S. 47, 51-52, the United States Supreme Court stated:
 "The flaw in the State's case is that none of the circumstances preceding the officers' detention of appellant justified a reasonable suspicion that he was involved in criminal conduct. Officer Venegas testified at appellant's trial that the situation in the alley `looked suspicious,' but he was unable to point to any facts supporting that conclusion. (Footnote omitted.) * * *
 "In the absence of any basis for suspecting appellant of misconduct, the balance between the public interest and appellant's right to personal security and privacy tilts in favor of freedom from police interference. * * * When * * * a stop is not based on objective criteria, the risk of arbitrary and abusive police practices exceeds tolerable limits. (Citation omitted.)"
A person's mere presence in an area of high crime activity does not suspend the protections of the Fourth Amendment. State v.Chandler (1989), 54 Ohio App.3d 92, 97. As stated by the dissent in State v. Ward (1992), 80 Ohio App.3d 701, 705-06:
 "* * * The majority of this court today, as has been the recent trend in this court, is actually holding that, as a matter of law, those unfortunate black, Hispanic and poor white citizens who by virtue of their economic and social status live in the so-called `high crime areas' are suspects. (Citations omitted.) The law makes them suspects who should be seized and searched just because a police officer who happens to have a couple of years' experience in the force says so. Any law that boldly condemns its citizens and renders them less than other citizens for purposes of constitutional protection based on their economic and social standing in that community is a bad law and has no place in a constitutional democracy. This court is consistently giving Bobo such an interpretation and it makes me very uncomfortable for the sake of law-abiding citizens who are subjected daily to such illegal intrusions because of who they are and where they live." (Emphasis added.)
The testimony of the officers at the hearing on the motion to suppress did not demonstrate that either officer had an objective and particularized suspicion that, "* * * criminal activity was afoot." State v. Andrews, 57 Ohio St.3d at 87. One officer admitted that there were no facts that led him to believe that appellant was involved in any illegal activity. Neither officer testified that appellant made any "furtive gestures." The case sub judice is clearly distinguishable from State v. Bobo
(1988), 37 Ohio St.3d 177, in which the officers approached the defendant while he was sitting in a parked car. In reversing the appellate court, the Supreme Court held that the stop had been proper under the facts of the case. In addition to noting that the area in which the car had been parked was known for its drug activity, the Court also emphasized the following: (1) the stop was made at 11:20 p.m.; (2) the lead officer in the stop was a twenty-year veteran who had made may arrests for drugs; (3) the officers were familiar with the area and how drug transactions were made; and (4) just prior to the stop, the officer saw the defendant popping up in his seat and then ducking down and leaning forward. Id. at 179-80.
The case of State v. Jones (1990), 70 Ohio App.3d 554, is very similar to the case sub judice. In that case, the officers saw the defendant sitting in a parked car with a known drug user. Id. at 556. The car was parked in an area known for drug activity, and a number of persons were standing beside the car. Id. At the suppression hearing, the arresting officer stated that based upon his experience, he believed that a drug transaction was occurring. Id. Notwithstanding these facts, the appellate court held that the stop was not warranted. In reaching this conclusion, the court emphasized that the defendant had not made any "furtive" movements, as had been the case in Bobo. Id.
at 559. In State v. Green (1991), 75 Ohio App.3d 284, 286, the court held that the defendant's movements, bending over and appearing to place something on the floor of the vehicle, could not objectively be characterized as the hiding of a weapon. See, also, State v. Jackson (1989), 52 Ohio App.3d 39. (Officer's observation of defendant leaning over in a parked vehicle insufficient to support search.) Furthermore, "the end result of a search is not the standard by which the validity of its preceding stop is measured." London v. Edley (1991), 75 Ohio App.3d 30,33.
Accordingly, we find that the trial court erred in denying appellant's motion to suppress. As "fruit of the poisonous tree" the evidence against appellant found incident to the search must be suppressed. State v. McMillan (1993), 91 Ohio App.3d 1,6.
Appellant's assignment of error is found well taken.
On consideration whereof, the judgment of the Lucas County Court of Common Pleas is reversed. This case is remanded to the trial court for proceedings consistent with this opinion. It is ordered that appellee pay the court costs of this appeal.
 JUDGMENT REVERSED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98. State v. Callaway L-99-1059
 _______________________________ JUDGE Peter M. Handwork, P.J.
 _______________________________ JUDGE CONCUR. Melvin L. Resnick, J.
 _______________________________ JUDGE Richard W. Knepper, J.
[1] Throughout the remainder of this opinion, the portion of the encounter between appellant and the officers, which occurred prior to the arrest, will be referred to as a stop. In the cases pertaining to this topic, the Supreme Court has employed the term "Terry" or "investigative" stop to refer to any seizure of a person which does not constitute an arrest. Thus, even though the vehicle in this case was parked when the encounter took place, the actions of the officers still constitute a "stop" until the arrest occurred.