OPINION
{¶ 1} Appellant, Brian L. Williams, appeals from the January 11, 2005 judgment entry of the Portage County Court of Common Pleas, in which he was sentenced for rape.
 {¶ 2} On October 1, 2004, appellant was indicted by the Portage County Grand Jury on one count of rape, a felony of the first degree, in violation of R.C. 2907.02(A)(2), and one count of kidnapping, a felony of the first degree, in violation of R.C.2905.01. Appellant pleaded not guilty at his arraignment on October 4, 2004.
 {¶ 3} On November 2, 2004, appellant filed a motion to suppress evidence, in which he alleged that the initial seizure was accomplished without any reasonable and articulable suspicion that he violated any law; certain statements made while he was in custody were without the benefit of counsel present and in the absence of the required Miranda warnings; and any statements allegedly made after his Miranda rights were read to him were not the result of a knowing, intelligent, and voluntary waiver of those rights.
 {¶ 4} A suppression hearing was held on November 24, 2004.
 {¶ 5} At that hearing, Detective Susan Hillegas ("Detective Hillegas"), with the Portage County Sheriff's Office, testified that she went over all of the rights set forth on the Miranda
form with appellant. She indicated that she read the rights out loud to appellant, he acknowledged that he understood his rights, and he memorialized his acknowledgment by signing the form. On cross-examination, Detective Hillegas stated that she met with Tina Jo Dunlap ("the victim") on August 30, 2004. After being informed by the victim that she had been raped, Detective Hillegas suggested that she go to Robinson Memorial Hospital for a rape kit. On August 31, 2004, appellant was given his Miranda
rights and the charge on the top of that form was for domestic violence. Detective Hillegas clarified that appellant and the victim lived together as boyfriend and girlfriend and he was arrested for domestic violence at that point.
 {¶ 6} Following the suppression hearing, the trial court overruled appellant's motion.
 {¶ 7} The matter proceeded to a jury trial which commenced on December 7, 2004.
 {¶ 8} At the trial, the victim testified that she and appellant lived together in a trailer in Randolph Township, Portage County, Ohio. She indicated that appellant had a big problem with crack cocaine during their relationship. The victim stated that appellant would become "verbally nasty" and call her names like "[y]ou fucking bitch or tell [her she] was ugly."
 {¶ 9} On the morning of August 28, 2004, the victim said that appellant called her on her cell phone and told her that he had smoked crack cocaine the night before. Later that night, appellant called the victim again and yelled at her because she was not home. When she arrived, appellant was asleep on the couch. Because she had forgotten to buy toilet paper, the victim decided to go to Dairy Mart. As she was backing out of the driveway, appellant called her on her cell phone, screaming and yelling for her to "get in the fucking house." After returning from Dairy Mart, the couple argued for about five to ten minutes before retiring to bed.
 {¶ 10} The next morning, appellant left for work, and the victim spent the day at her parents' house. The victim missed a call from appellant because she left her cell phone in the car. When she returned appellant's phone call, he yelled at her for not being at home. The victim went home and took her three-year-old grandson with her to spend the night. After putting her grandson down for bed, she said that appellant yelled at her for over one hour before throwing and breaking things around the house. The victim stated that appellant said that he had a gun in his van and wanted to bring it in so they could play Russian roulette and see who would win. Appellant then came over to the victim, grabbed her, ripped her glasses off her face and threw them away.
 {¶ 11} The foregoing outburst was followed by a short calm period before the violence erupted again. After the victim told appellant to never touch her in a non-loving way, he tried to hug her. She resisted and said that appellant's gesture was not an attempt at affection but rather an attempt to control her. Appellant darted toward her, picked her off the couch, put her hard on the floor, and told her that he would show her what control meant. Appellant pulled off the victim's shorts, scooted her across the floor and forced himself sexually on her. While appellant forcefully engaged in vaginal intercourse, the victim repeatedly told him that he was hurting her. When he was done, appellant threw her legs aside and said "[t]hat is control."
 {¶ 12} According to the victim, appellant took a bunch of sleeping pills because he wanted to die that night. He would not allow her to call 9-1-1 because he was afraid that the sheriff would come and he did not want to go to jail. The couple lay in bed until appellant fell asleep. The victim attempted to leave the house with her grandson but because appellant had put dead bolt locks on the interior doors and he was the only one with the key, she could not leave. After waking and pleading with appellant, the victim and her grandson were able to leave the trailer the next morning. The victim told her mother and daughter what had happened and they convinced her to go to the police. The victim stressed that she did not want to have sexual intercourse with appellant nor did she want to stay in the trailer with him on the night at issue.
 {¶ 13} Dr. Brian Adams ("Dr. Adams"), an emergency room doctor at Robinson Memorial Hospital, testified for appellee, the state of Ohio, that the victim came into the hospital on August 30, 2004, complaining that she had been sexually assaulted by her boyfriend. Dr. Adams indicated that after performing a complete examination, there were no signs of bruising or redness around the victim's vaginal area, but that it "doesn't tell you one thing or the other[,]" with respect to whether she was raped.
 {¶ 14} Andrea Gibson ("Nurse Gibson"), a registered nurse at Robinson Memorial Hospital, testified for appellee that she came into contact with the victim on August 30, 2004. Nurse Gibson indicated that the victim was very quiet, tearful, and admitted that she was ashamed. The victim told Nurse Gibson that appellant forced himself on her sexually as well as locked her in the trailer. On cross-examination, she stated that she did not notice any physical abnormalities on the victim's body.
 {¶ 15} Deputy Patrick Burns ("Deputy Burns"), a canine handler with the Portage County Sheriff's Office, testified for appellee that on August 30, 2004, he was assigned to find appellant, who had domestic violence and rape warrants. Deputy Burns went to appellant's trailer and saw him stick his head out of the window. At that time, Deputy Burns yelled to him that he was under arrest and appellant placed his head back inside. Deputy Burns kicked the door in and placed him under arrest.
 {¶ 16} Detective Hillegas testified at trial for appellee. She indicated that appellant broke down crying several times during their interview after the incident at issue, saying that he needed help. Detective Hillegas stated that appellant said he had sex that night with the victim, and remembered the victim telling him that he was hurting her.
 {¶ 17} At the end of the appellee's case, appellant's counsel moved for an acquittal pursuant to Crim.R. 29, which was overruled by the trial court.
 {¶ 18} Dr. Edward Cornett ("Dr. Cornett") testified for appellant as a paid expert in emergency medicine and as a forensic examiner. Dr. Cornett stated that he did not know appellant or the victim. He reviewed the information contained in the emergency medicine evaluation and said that there was no evidence of physical injury.
 {¶ 19} At the close of the defense's case, appellant's counsel renewed the Crim.R. 29 motion, which was overruled by the trial court.
 {¶ 20} Following the trial, on December 9, 2004, the jury returned a verdict of guilty on the rape charge, and not guilty with respect to kidnapping. On December 22, 2004, appellant filed a Crim.R. 29(C) motion for acquittal, which was overruled by the trial court on December 28, 2004.
 {¶ 21} Pursuant to its January 11, 2005 judgment entry, the trial court sentenced appellant to five years in prison, with credit for one hundred thirty-four days. It is from that judgment that appellant filed a timely notice of appeal and makes the following assignments of error:
 {¶ 22} "[1.] The verdict of the trial court is against the manifest weight of the evidence and against the sufficiency of the evidence presented.
 {¶ 23} "[2.] The interrogation of [appellant] was in violation of his rights under Miranda v. Arizona, and any evidence from this interrogation should have been suppressed by the trial court."
 {¶ 24} In his first assignment of error, appellant argues that the verdict is against the manifest weight and sufficiency of the evidence presented.
 {¶ 25} As this court stated in State v. Schlee (Dec. 23, 1994), 11th Dist. No. 93-L0-82, 1994 Ohio App. LEXIS 5862, at 13-14:
 {¶ 26} "`Sufficiency' challenges whether the prosecution has presented evidence on each element of the offense to allow the matter to go to the jury, while `manifest weight' contests the believability of the evidence presented.
 {¶ 27} "`"(* * *)The test (for sufficiency of the evidence) is whether after viewing the probative evidence and the inference[s] drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all of the elements of the offense beyond a reasonable doubt. The claimof insufficient evidence invokes an inquiry about due process. Itraises a question of law, the resolution of which does not allowthe court to weigh the evidence. * * *"'
 {¶ 28} "In other words, the standard to be applied on a question concerning sufficiency is: when viewing the evidence `in a light most favorable to the prosecution,' * * * `(a) reviewing court (should) not reverse a jury verdict where there is substantial evidence upon which the jury could reasonably conclude that all of the elements of an offense have been proven beyond a reasonable doubt.' * * *" (Emphasis sic.) (Citations omitted.)
 {¶ 29} "[A] reviewing court must look to the evidence presented * * * to assess whether the state offered evidence on each statutory element of the offense, so that a rational trier of fact may infer that the offense was committed beyond a reasonable doubt." State v. March (July 16, 1999), 11th Dist. No. 98-L-065, 1999 Ohio App. LEXIS 3333, at 8. The evidence is to be viewed in a light most favorable to the prosecution when conducting this inquiry. State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus. Further, the verdict will not be disturbed on appeal unless the reviewing court finds that reasonable minds could not have arrived at the conclusion reached by the trier of fact. State v. Dennis (1997),79 Ohio St.3d 421, 430.
 {¶ 30} In Schlee, supra, at 14-15, we also stated that:
 {¶ 31} "`[M]anifest weight' requires a review of the weight of the evidence presented, not whether the state has offered sufficient evidence on each element of the offense.
 {¶ 32} "`In determining whether the verdict was against the manifest weight of the evidence, "(* * *) the court reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. (* * *)"' (Citations omitted.) * * *." (Emphasis sic.)
 {¶ 33} A judgment of a trial court should be reversed as being against the manifest weight of the evidence "`only in the exceptional case in which the evidence weighs heavily against the conviction.'" State v. Thompkins (1997), 78 Ohio St.3d 380,387.
 {¶ 34} In the case at bar, with respect to the sufficiency of the evidence, there is substantial evidence upon which the jury could reasonably conclude beyond a reasonable doubt that appellant was guilty of rape.
 {¶ 35} R.C. 2907.02(A)(2) provides: "[n]o person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force."
 {¶ 36} R.C. 2907.01(A) defines sexual conduct in part as "vaginal intercourse between a male and female[.]"
 {¶ 37} R.C. 2901.01(A)(1) defines force as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing."
 {¶ 38} In finding appellant guilty of rape, the jury was required to find that appellee had proven beyond a reasonable doubt that he acted purposely. R.C. 2901.22(A) provides that "[a] person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature."
 {¶ 39} Again, the evidence at trial revealed that on the night at issue, appellant became violent, forced himself on the victim, and engaged in vaginal intercourse. Appellant continued his violence despite the victim's initial request to never touch her in a non-loving way as well as her subsequent pleas that he was hurting her. Appellant's multiple comments that he was showing the victim "control" demonstrate that he specifically intended to cause a certain result when he forcefully engaged in intercourse with her.
 {¶ 40} Appellant alleges that there was no evidence of force because there was no bruising, abrasions, or lacerations on the victim. We disagree. Appellant's physical and verbal outbursts, as well as his destruction of the victim's glasses, putting the victim hard on the floor, taking off her shorts, and engaging in vaginal intercourse which caused her pain, satisfies the element of force. We note that R.C. 2901.01(A)(1) does not require the presence of physical signs in order to meet the definition of force.
 {¶ 41} In addition, the victim's testimony was corroborated at trial. Again, Dr. Adams testified that the victim came into the hospital, complaining that she had been sexually assaulted by appellant. Nurse Gibson indicated that the victim said that appellant forced himself on her sexually. Nurse Gibson stated that the victim was very quiet, tearful, and admitted that she was ashamed. Detective Hillegas said that appellant broke down crying several times during their interview, saying that he needed help. According to Detective Hillegas, appellant admitted that he had sex that night with the victim, and that the victim told him that he was hurting her. Also, the photographs of the trailer showing the destruction following appellant's violent outbursts further corroborate the victim's testimony.
 {¶ 42} Based on Schlee, supra, there is substantial evidence upon which the jury could reasonably conclude beyond a reasonable doubt that the elements of the offense have been proven.
 {¶ 43} With regard to the manifest weight of the evidence, appellant contends that there were inconsistencies between the victim's testimony and Nurse Gibson's as well as Detective Hillegas's. However, a review of the trial transcript reveals no significant inconsistencies, only slight differences in word choices. The transcript establishes that the victim did not want to be touched in a non-loving manner, was fearful or scared, and was forcefully put on the floor by appellant. In addition, the fact that the victim discussed the attack with her mother and daughter before reporting appellant's criminal conduct, as well as appellant's voluntary use of prescription medication and crack cocaine do not demonstrate evidence strongly favoring appellant. Pursuant to Schlee and Thompkins, supra, the jury did not clearly lose its way in convicting appellant of rape.
 {¶ 44} Here, the jury clearly chose to believe the testimony of appellee's witnesses as opposed to appellant's. Appellant's first assignment of error is without merit.
 {¶ 45} In his second assignment of error, appellant alleges that his interrogation was in violation of his Miranda rights, and that any evidence from his interrogation should have been suppressed by the trial court.
 {¶ 46} This court stated in State v. Jones, 11th Dist. No. 2001-A-0041, 2002-Ohio-6569, at ¶ 16, that:
 {¶ 47} "[a]t a hearing on a motion to suppress, the trial court assumes the role of the trier of facts and, therefore, is in the best position to resolve questions of fact and evaluate the credibility of witnesses. State v. Mills (1992),62 Ohio St.3d 357, 366 * * *. When reviewing a motion to suppress, an appellate court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence.State v. Guysinger (1993), 86 Ohio App.3d 592, 594 * * *. Accepting these findings of facts as true, a reviewing court must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the appropriate legal standard. State v. Curry (1994), 95 Ohio App.3d 93, 96
* * *." (Parallel citations omitted.)
 {¶ 48} This court stated in State v. Taylor (Mar. 23, 2001), 11th Dist. No. 99-P0-071, 2001 Ohio App. LEXIS 1393, at 6-7:
 {¶ 49} "[i]t is well-established law that a police officer must inform a suspect in custody that he has the right to remain silent, that his statements may be used against him in a court of law, that he has the right to an attorney, and that if he cannot afford an attorney, one will be appointed prior to questioning.Miranda v. Arizona (1966), 384 U.S. 436, 444 * * *. Thereafter, the suspect may waive those rights and make incriminating statements against himself without the presence of counsel. Id." (Parallel citation omitted.)
 {¶ 50} We further stated in Taylor, supra, at 8, quotingState v. Eley (1996), 77 Ohio St.3d 174, 178 * * *, that "* * * the state has the burden of proving by a preponderance of the evidence that a defendant `voluntarily, knowingly, and intelligently' waived his Miranda rights based on the `totality of the circumstances' surrounding the interrogation. * * *" (Parallel citation omitted.)
 {¶ 51} In the case sub judice, appellant's reliance on Statev. Wilson (1986), 31 Ohio App.3d 133, for the proposition that his Miranda waiver was not knowing, intelligent, or voluntary because he was misinformed regarding the nature of the investigation is misplaced. In Wilson, the defendant signed a waiver of his rights prior to taking a polygraph and was asked a series of control questions about other crimes which were not the subject of the original test. The defendant asked to remove the wires and end the test, but the examiner refused. Id. at 135. The Twelfth District reversed the conviction and held that the defendant should have been informed of his rights prior to being questioned about other crimes. The court stated that the defendant's written waiver was invalid as to the other crimes because he did not know he was going to be questioned about the other crimes and, thus, the waiver was not "voluntary, knowing, and intelligent." Id. at 136.
 {¶ 52} Unlike Wilson, the instant matter does not involve a waiver of rights prior to a polygraph examination. Here, although he initially knew that he was only charged with domestic violence, appellant willingly discussed his sexual conduct with the victim as well as volunteered information regarding his use of crack cocaine and violent behavior. In addition, Wilson is distinguishable from the case at bar because the record establishes that at no point did appellant request any limitation on the subject matter or ask to end the conversation.
 {¶ 53} Appellant was fully informed of his Miranda rights, separately initialed each right indicating his understanding, and signed a waiver. Appellant fails to demonstrate that his waiver was not made knowingly, voluntarily, or intelligently. State v.Rutter (1990), 68 Ohio App.3d 638, 644. Appellant's second assignment of error is without merit.
 {¶ 54} For the foregoing reasons, appellant's assignments of error are not well-taken. The judgment of the Portage County Court of Common Pleas is affirmed.
Rice, J., O'Toole, J., concur.