JOURNAL ENTRY and OPINION
{¶ 1} Defendant-appellant Lacey Kirk appeals from his convictions after a jury trial for rape and kidnapping, and the trial court's subsequent finding that he was guilty of having a weapon while under disability.
 {¶ 2} Kirk argues his convictions are supported by neither sufficient evidence nor the weight of the evidence. This court disagrees; therefore, his convictions are affirmed.
 {¶ 3} The testimony of the victim, M,[1] indicated the incident which resulted in Kirk's convictions took place on the morning of November 17, 2004. M was sixteen years old. Both parents worked outside the home; therefore, according to her usual routine, M prepared herself for school and left her home on East 127th Street in Cleveland just after 7:00 a.m. She boarded an RTA bus.
 {¶ 4} Shortly thereafter, M saw from the window a vehicle traveling alongside the bus; inside the vehicle, sitting in the passenger seat, M noticed one of her young female friends. The driver of the vehicle, whom M later identified as Kirk, seemed to be "playing," since he kept pace with the bus as M's friend gestured to her.
 {¶ 5} Thus enticed, M alighted from the bus and entered the vehicle. She spent the next few minutes chatting with her friend. After a time, Kirk stopped the vehicle to permit M's friend to exit at her intended destination. M also intended to exit, knowing she would need to use a different method of getting to school, but at that time, Kirk told her he would drive her there. M consented to this arrangement.
 {¶ 6} As he drove away, however, Kirk told M he first had to give someone else a ride. M remained in the back seat while he retrieved a woman who was a stranger to her and drove the woman to another location. By the time the woman left the vehicle, it was after 8:00 a.m. and M had lost any desire to go to school. Thus, when Kirk suggested the two of them go "to the mall" together, she agreed.
 {¶ 7} M informed him she first needed to change out of her school uniform, so Kirk took her home for that purpose. He drove around the block while she entered the house, but she did not think this unusual. M returned to Kirk's vehicle wearing a plain skirt. At that time, he told her he also needed to go home to change clothing.
 {¶ 8} M went inside with Kirk upon their arrival to use the bathroom; the two stayed only a short time, but M noticed Kirk's disabled mother there. After they again were on the road, Kirk told M he needed to make another stop, this time at his aunt's house.
 {¶ 9} Kirk drove back to the area of M's neighborhood. When he came to his destination, he backed his vehicle into a driveway. He then requested M to get into the rear passenger seat, explaining that his "auntie" would not approve of him driving with a girl in the front who was so much younger than he. M acquiesced, but was surprised when Kirk joined her in the rear seat area.
 {¶ 10} Once they were thus situated, Kirk began to talk about sex, and within a few minutes, exposed his penis to her and told her to touch it. Upon her refusal, he grabbed M by her right leg, placed the leg upon his shoulder, and, while she was unbalanced, wrestled her panties off. Despite M's struggle to escape, he thereupon forced her backward down onto the rear seat and climbed on top of her.
 {¶ 11} The activity in Kirk's vehicle, however, attracted the attention of a male passerby. Noticing the man's presence at the end of the driveway, Kirk paused briefly in his attack, but, in order to discourage M from using the interval to her advantage, Kirk extracted a gun from a bag on the vehicle's floor. He displayed it and told M that if she made any further resistance, the next time her mother saw her, she "would be dead."
 {¶ 12} After the passerby resumed his progress on the sidewalk, Kirk raped M vaginally. However, the pedestrian, apparently still curious about what was occurring, returned to stare at Kirk's vehicle. M used the opportunity of a witness's presence to push Kirk off, gather her shoes and panties, and exit.
 {¶ 13} She walked quickly away. Kirk reentered the driver's seat to follow her in his vehicle. He asked her to keep quiet about the incident. When she refused to respond, he began to threaten her family.
 {¶ 14} M ultimately escaped from Kirk's influence with the help of a "good Samaritan," Victor Clack. Clack testified that M appeared to be in distress as Kirk tracked her from his vehicle; she was crying and "dazed" with her "hair all messed up." Clack stopped his car and offered her a ride, thus causing Kirk to leave the area. After M told Clack she had just been raped, he encouraged her to use his cellular telephone to call police. She agreed, but, after Clack acceded to her request that he take her home, she failed to respond when the officers arrived.
 {¶ 15} Instead, M cleansed herself and waited for her younger sister's school day to end. It was that evening, and only after Clack returned to check on her welfare, that M eventually allowed the involvement of the police in the incident and permitted her mother to take her to the hospital.
 {¶ 16} Kirk subsequently was indicted on one count of rape with a firearm specification, three counts of kidnapping,[2] each with a sexual motivation and a firearm specification, and one count of having a weapon while under disability. When his case proceeded to trial, Kirk executed a jury waiver with respect to only the final count.
 {¶ 17} The jury heard the testimony of M, the nurse who examined M at the hospital emergency room, Clack, and two police officers. Kirk presented the testimony of his mother and his brother in an effort to establish M was a willing participant in the incident. The jury, however, and later, the court, found Kirk guilty of the charges. The trial court ultimately sentenced Kirk to a total term of incarceration of ten years for his convictions.
 {¶ 18} Kirk presents the following two assignments of error for review.
 {¶ 19} "I. The trial court erred in denying Appellant's motion for acquittal as to the charges when the state failed to present sufficient evidence to sustain a conviction.
 {¶ 20} "II. Appellant's conviction (sic) is against the manifest weight of the evidence."
 {¶ 21} In his assignments of error, Kirk essentially argues that M's testimony, since it lacked support by any physical evidence, remained uncorroborated; therefore, the trial court improperly denied his motions for acquittal, and his convictions should be reversed. His arguments are unpersuasive.
 {¶ 22} A defendant's motions for acquittal should be denied if the evidence is such that reasonable minds could reach different conclusions as to whether each material element of the crimes has been proven beyond a reasonable doubt. State v.Dennis, 79 Ohio St.3d 421, 1997-Ohio-372; State v. Jenks
(1991), 61 Ohio St.3d 259; State v. Bridgeman (1978),55 Ohio St.2d 261. The trial court is required to view the evidence in a light most favorable to the state. State v. Martin (1983),20 Ohio App.3d 172.
 {¶ 23} With regard to an appellate court's function in reviewing the weight of the evidence, this court is required to consider the entire record and determine whether in resolving any conflicts in the evidence, the jury "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Id. at 175.
 {¶ 24} This court must be mindful, therefore, that the weight of the evidence and the credibility of the witnesses are matters primarily for the jury to consider. State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 25} In this case, the evidence demonstrated that M gave a consistent version of the incident, which was supported by the testimony of the other state's witnesses, who described M's demeanor after the incident as upset and "crying." M indicated Kirk's initial actions were disarming; he gave people rides, made stops for various purposes while he drove her around, and promised her he would eventually take her shopping. During and after the incident, however, his personality became extremely intimidating.
 {¶ 26} Kirk's family members, on the other hand, provided conflicting accounts. His mother's memory of what M wore that morning did not coincide with his brother's, and his brother changed his testimony about the time that he stated he saw M at their house. Initially, Kirk's brother stated he met M when Kirk brought her to the house in the late morning, but later stated he couldn't remember. At any event, he could not explain why, if her visit to the Kirk home lasted approximately "45" minutes, M failed to mention during her testimony that he, too, was present.
 {¶ 27} In short, there was consistent, credible evidence that Kirk restrained M's liberty for the purpose of committing a felony, and that he raped and terrorized her, showing her a gun to ensure her compliance. The trial court, therefore, correctly concluded Kirk's guilt of the crime was for the jury to determine based upon the evidence presented at trial. State v. Williams,
Portage App. No. 2005-P-0009, 2006-Ohio-1169; State v.McDougler, Cuyahoga App. No. 86152, 2006-Ohio-100.
 {¶ 28} Moreover, in view of the frank and logical nature of M's version of the incident, as opposed to self-serving and contradictory testimony given by Kirk's mother and brother, the jury acted within its prerogative to credit the testimony of the state's witnesses. State v. Rice, Cuyahoga App. No. 82547,2003-Ohio-6947.
 {¶ 29} For the foregoing reasons, Kirk's first and second assignments of error are overruled.
Affirmed.
It is ordered that appellee recover of appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Michael J. Corrigan, J. and Patricia Ann Blackmon, J. concur.
[1] Pursuant to this court's policy of protecting the victim of a sexual offense, she is referred to only by an initial.
[2] Kirk was charged in these counts with separate violations of R.C. 2905.01(A), viz., subsections (2), (3) and (4).