OPINION
{¶ 1} Robert E. Egli, III ("Mr. Egli"), appellant, appeals the judgment of the Portage County Court of Common Pleas, finding him guilty of the offenses of rape and assault. For the reasons that follow, we affirm.
 {¶ 2} Procedural and Substantive Facts
 {¶ 3} On November 30, 2006, Mr. Egli was indicted for two counts of rape, in violation of R.C. 2907.02, a felony of the first degree, and two counts of assault, in violation of R.C. 2903.13, a misdemeanor of the first degree. Counts one and two of the *Page 2 
indictment stemmed from acts that occurred on November 7, 2006, whereas counts three and four involved acts that occurred on November 8, 2006.
 {¶ 4} Prior to trial, in an attempt to show that Mr. Egli had consensual sex with Ms. "A", defense counsel sought to introduce specific instances of the victim's past sexual activity. The trial court conducted a rape shield hearing and excluded the evidence on the ground that the prejudicial nature of the evidence outweighed any probative value.
 {¶ 5} At trial, the state presented four witnesses: Ms. A; Officer Brandon Lance of the Brimfield Township Police Department; Chief David Blough of the Brimfield Township Police Department; Detective David Harmon of the Brimfield Township Police Department; and Valerie Prulhiere, a sexual assault nurse at St. Thomas Hospital. Mr. Egli took the stand in his own defense. He also called his sister, Tanya Egli, to testify.
 {¶ 6} Ms. A testified that at around 9:00 p.m. on the evening of November 7, 2006, she returned to the Alden Inn, where she had been living with Mr. Egli and their two small children, who were two and three years old at the time. Ms. A said that she had met Mr. Egli in 2001 or 2002 and that the two had lived together on and off over the years.
 {¶ 7} When Ms. A returned to the inn on November 7, 2006, she said that Mr. Egli came up behind her as she was cleaning the bathroom, grabbed her shoulders, called her a whore, and said: "You like to be hurt, don't you?" Mr. Egli then pushed her to the floor and hit, kicked, punched and stepped on her. Ms. A cried and told him to stop, but instead Mr. Egli said: "Take your fucking clothes off or I'm going to hurt you even worse." Mr. Egli took her clothes off, and poked her with a money clip that had *Page 3 
two knives attached to its sides. He told her to get into the shower, which she agreed to do because she was scared by his threats. Mr. Egli left the bathroom, but then got into the shower with her and demanded anal sex.
 {¶ 8} Ms. A started to cry and said: "No. I don't want to. Please don't. It's going to hurt." Then, Mr. Egli told her she would have to perform oral sex on him. Mr. Egli shoved her against the wall of the shower, grabbed the back of her head, and pulled her hair. Ms. A said no, but Mr. Egli responded by saying: "I'm going to fucking piss on you if you don't suck my dick." Mr. Egli then urinated on her thighs. After that, Ms. A performed oral sex on him because he kept hitting and threatening her.
 {¶ 9} Mr. Egli then told Ms. A to bend over and he penetrated her vaginally. Mr. Egli lost his erection and started hitting and pushing Ms. A, demanding oral sex to regain an erection. She did so that he would stop hurting her. When he lost his erection a second time, he again insisted that she perform oral sex. Ms. A said he kept hitting and hurting her. She begged him to stop, but he had vaginal sex with her again. Mr. Egli left the bathroom and Ms. A took a shower. She went to sleep in the same bed as her children.
 {¶ 10} The next morning, Mr. Egli woke up Ms. A and told her to come lay down with him. She started to cry, but he said he would not hurt her again. Ms. A went to his bed because she was afraid their children would awaken. Mr. Egli said he did not remember what happened the night before but he kept telling her to shut up so that the children would not wake up. Mr. Egli turned her over and had what she described as rough vaginal intercourse with her for about half an hour. After Mr. Egli ejaculated, he left to get cigarettes. *Page 4 
 {¶ 11} When Mr. Egli returned, he told her he wanted to have sex again. She said no, but he was hitting, punching, kicking and pushing her around. He then told her to put the children into the bathtub so that they could be alone. She was crying and said she did not want to, but complied because she wanted to protect her children and did not want to be hurt anymore. Mr. Egli then told her to perform oral sex on him. He grabbed the back of her head and put his penis inside her mouth with such force that he was choking her.
 {¶ 12} After that, Mr. Egli had vaginal and then anal intercourse with Ms. A. During anal intercourse, Mr. Egli screamed that he really wanted to make it hurt so he penetrated her deeply. Ms. A's whole body began to shake and she had trouble breathing. Ms. A screamed: "There's something wrong with me." Mr. Egli yelled for her to stand up, but she couldn't.
 {¶ 13} Mr. Egli carried Ms. A into the bathtub and turned the warm shower water on, telling her to "calm down baby. It's okay." Mr. Egli got into the bathtub with her and wrapped his arms around her, telling her that it was okay. Mr. Egli got out of the bathtub and helped her stand and dry off. Ms. A's right side of her body was bothering her so she had her young daughter help get her right leg into her underwear.
 {¶ 14} Ms. A sat down in a chair in the bedroom and Mr. Egli told her he wanted to have sex again. He took off her pants and underwear and had vaginal sex with her. Ms. A cried for him to stop but he yelled: "Shut up or I'm going to hurt you really bad. And if you don't shut up I'm going to fuck you in the ass and it's going to be eight hundred times worse." At the time, their son had fallen asleep but their daughter was awake watching television in the same room. *Page 5 
 {¶ 15} Mr. Egli left to get the children food to eat. While he was gone, Ms. A took the children and ran to the office, screaming for help. The clerk told her the police were on their way.
 {¶ 16} Officer Brandon Lance ("Officer Lance") of the Brimfield Township Police Department arrived at the Alden Inn in response to a domestic violence call. Mr. Egli entered the lobby and the clerk identified him to Officer Lance. Mr. Egli also provided Officer Lance with identification. Officer Lance tried to question Mr. Egli, but Mr. Egli said he would not speak to him until he saw his children.
 {¶ 17} In the meantime, Detective David Harmon ("Detective Harmon"), Officer Wheeler, and Chief of Police David Blough ("Chief Blough"), arrived at the scene and began questioning Ms. A. Both Detective Harmon and Chief Blough described Ms. A as being visibly upset. Detective Harmon drove her to St. Thomas Hospital.
 {¶ 18} After speaking with Ms. A, Chief Blough approached Mr. Egli, who again inquired about his children. Chief Blough read Mr. Egli his Miranda rights. Mr. Egli admitted to having vaginal and anal sex with Ms. A, but he said it was consensual. When asked about strangle marks Chief Blough observed on Ms. A's neck, Mr. Egli seemed unsurprised and responded: "That's how she likes it."
 {¶ 19} Valerie Prulhiere ("Nurse Prulhiere"), sexual assault nurse with St. Thomas Hospital DOVE Unit, a specialized health care unit for victims of sexual assault, testified that she examined Ms. A upon her arrival to the hospital. The history Ms. A provided Nurse Prulhiere was consistent with her own testimony. In addition to describing in detail the sexual conduct that transpired, Ms. A told her that she had generalized body aches and rated the pain she was experiencing in her anus as a ten *Page 6 
out of ten. Ms. A told Nurse Prulhiere, "I feel like I'm ripped open * * *." Ms. A said that she had jaw pain, right leg pain, back pain and that her external genitals were "sore to touch."
 {¶ 20} In addition to the history and physical exam, external and internal colposcopic photographs of Ms. A were taken. Nurse Pruhliere testified that these photographs revealed abrasions and swelling to her upper right lip; redness on her neck; bruising to her right ear; abrasions to the hairline; leg and knee contusions; lacerations and bruising to the anus; and redness and swelling of the vaginal area. Nurse Pruhliere testified that Ms. A's injuries were consistent with the history she provided; however, she acknowledged that it is not possible from a medical standpoint to determine the issue of consent.
 {¶ 21} At the close of the state's case, defense counsel moved for acquittal, which the court denied. Mr. Egli took the stand in his own defense and gave a completely different account of what transpired between the evening of November 7 and November 8, 2006. Although Mr. Egli admitted that he and Ms. A had vaginal, anal and oral sex, he said that it was consensual. He also testified that Ms. A said she "wanted it rough" and that she also wanted to have anal sex, so he agreed. Mr. Egli denied hitting Ms. A, forcing her down by her shoulders, or threatening to hurt her if she didn't do what he said. He also denied that Ms. A was shaking and having trouble breathing on November 8, 2006, and denied that he carried her into the bathtub.
 {¶ 22} Mr. Egli further testified that when the police arrived at the scene, he was concerned about his children and asked to see them but was not allowed to do so. He said that he provided the police with two car seats and then left. *Page 7 
 {¶ 23} The state called Detective Harmon as a rebuttal witness to rebut Mr. Egli's testimony that when the police came to the scene he had provided them with two car seats for his children. Detective Harmon testified that only one seat had been given to him by Mr. Egli. The state also called Chief Blough as a rebuttal witness, who, contrary to Mr. Egli's testimony, testified that Mr. Egli had told him that Ms. A had appeared sick and that he had carried her into the bathtub.
 {¶ 24} The defense then called Mr. Egli's sister, Tanya Egli ("Tanya"), as a surrebuttal witness. She testified that she observed her brother put a car seat into the police cruiser.
 {¶ 25} The jury returned a verdict of guilty on counts three and four of the indictment, stemming from what transpired on November 8, 2006. However, the jury was unable to reach a verdict on the remaining rape and assault charges stemming from incidents that occurred in the evening of November 7, 2006; thus, the trial court declared a mistrial on counts one and two.
 {¶ 26} The trial court sentenced Mr. Egli to a prison term of five years for the rape conviction, with fifty-seven days credit for time served and one hundred eighty days for the assault charge, to run concurrent to the sentence for the rape.
 {¶ 27} Mr. Egli filed the instant appeal, raising three assignments of error:
 {¶ 28} "[1.] The evidence presented was insufficient and the Defendants [sic] conviction was against the manifest weight of the evidence.
 {¶ 29} "[2.] The trial court abused its discretion in failing to allow testimony of the prior sexual history between the Defendant and the victim. *Page 8 
 {¶ 30} "[3.] The Defendant received ineffective assistance of trial counsel when counsel failed to proffer during the trial the expected testimony of the witnesses as to the prior sexual acts occurring between the Defendant and the victim and the prior allegation of rape made by the victim against the Defendant."
 {¶ 31} Rape and Assault Convictions
 {¶ 32} In his first assignment of error, Mr. Egli argues that the trial court erred by not granting his motion for acquittal under Crim. R. 29(A). Specifically, he contends that there was insufficient evidence presented to support his convictions and that his convictions were against the manifest weight of the evidence. Mr. Egli is therefore advancing both a sufficiency of the evidence argument and a manifest weight of the evidence argument.
 {¶ 33} In State v. Schlee (Dec. 23, 1994), 11th Dist. No. 93-L-082, 1994 Ohio App. LEXIS 5862, we clarified the distinction between a manifest weight and sufficiency challenge. In Schlee, we held that "`[sufficiency' challenges whether the prosecution has presented evidence on each element of the offense to allow the matter to go to the jury, while `manifest weight' contests the believability of the evidence presented." Id. at 13. Thus, the standard to be applied in a sufficiency of the evidence challenge is: "when viewing the evidence `in a light most favorable to the prosecution,' * * * [a] reviewing court [should] not reverse a jury verdict where there is substantial evidence upon which the jury could reasonably conclude that all of the elements of an offense have been proved beyond a reasonable doubt." Id. at 14, citingState v. Eley (1978), 56 Ohio St. 2d 169, syllabus." State v.Miliner, 11th Dist No. 2007-T-0031, 2007-Ohio-6561 at ¶ 17. Therefore, a sufficiency challenge requires us to review the record to *Page 9 
determine whether the state presented evidence on each of the elements of the offenses presented. Id.
 {¶ 34} Defense counsel failed to renew its motion for acquittal at the close of Mr. Egli's case. Nevertheless, since Mr. Egli has also argued that his conviction was against the manifest weight of the evidence, we may still decide the sufficiency issue on its merits. State v.Pesec, 11th Dist. No. 2006-P-0084, 2007-Ohio-3846, at ¶ 44, citingCity of Chardon v. Patterson, 11th Dist. No. 2006-G-2726,2007-Ohio-1769, at ¶ 14; State v. Heiney, 11th Dist. No. 2006-P-0073,2007-Ohio-1199, at ¶ 11. "This is because a determination of whether a conviction is or is not supported by the weight of the evidence `necessarily rests on the existence of sufficient evidence.'" Id., citing State v. McCrory, 11th Dist. No. 2006-P-0017, 2006-Ohio-6348, at ¶ 40.
 {¶ 35} Mr. Egli was found guilty of the crime of rape, in violation of R.C. 2907.02(A)(2), which provides that: "No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." Sexual conduct is defined in R.C. 2907.01(A) as: "vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse." Force is defined in R.C. 2901.01(A)(1) as: "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing."
 {¶ 36} Mr. Egli concedes that he and Ms. A engaged in vaginal and anal intercourse, and in oral sex. However, he argues that his convictions must be *Page 10 
overturned because the sexual conduct was consensual and that the only evidence against him was that of Ms. A, which in and of itself was insufficient evidence upon which to convict him.
 {¶ 37} We disagree and instead find that there was more than sufficient evidence for the jury to find Mr. Egli guilty beyond a reasonable doubt of the crime of rape. Mr. Egli concedes that the sexual conduct occurred. In order to be convicted of rape, the state must have also presented sufficient evidence that the sexual conduct was nonconsensual and was done with force.
 {¶ 38} Each of these additional elements was proven during Ms. A's testimony. In particular, Ms. A testified that she did not consent to the sexual conduct, and, in fact, that prior to engaging in vaginal, anal and oral sex, Mr. Egli repeatedly threatened that he would hurt her if she refused. Not only did Mr. Egli make verbal threats, but he also used violence, compulsion, and physical restraint to make her comply. According to Ms. A, Mr. Egli hit, kicked and pushed her; he grabbed the back of her head and forcefully put his penis inside her mouth. Despite her pleas to stop, Mr. Egli continued to engage in rough vaginal and anal sex. Based upon this testimony and given the fact that Ms. A's physical examination at the DOVE sexual abuse unit of the hospital demonstrated injuries consistent with rough sexual conduct, the state clearly produced sufficient evidence on each of the essential elements for rape from which the jury could find Mr. Egli guilty beyond a reasonable doubt.
 {¶ 39} We must next decide whether the rape verdict is supported by the manifest weight of the evidence. After reviewing the record, we find that the state *Page 11 
presented competent, credible evidence from which the jury could determine that appellant was guilty. We cannot conclude that the jury lost its way.
 {¶ 40} As previously stated, because Mr. Egli admitted to engaging in the sexual conduct, the issues for the jury to decide were whether the sexual conduct was consensual and whether force was used to make Ms. A submit to such sexual conduct. In essence, this involves a matter of credibility.
 {¶ 41} "When assessing witness credibility, `[t]he choice between credible witnesses and their conflicting testimony rests solely with the finder of fact' * * *." Miliner at ¶ 26, citing State v. Montie, 11th Dist. No. 2006-P-0058, 2007-Ohio-2317, at ¶ 48. "Indeed, the factfinder is free to believe all, part, or none of the testimony of each witness appearing before it." Id. "Furthermore, if the evidence is susceptible to more than one interpretation, a reviewing court must interpret it in a manner consistent with the verdict." Id. Thus, for matters of credibility, we "defer to the trier of fact. This is so since `the jurors see the witnesses and observe their demeanor. The credibility to be given to each and all is for the jury.'" Montie at ¶ 58, citingSchlee at *16.
 {¶ 42} Ms. A testified that she was forced to submit to rough vaginal, anal, and oral sex against her will. Ms. A pleaded with Mr. Egli to stop and screamed out in pain, but Mr. Egli continued to demand sex. After Mr. Egli forced her to perform fellatio on him, he then engaged in rough anal sex. Ms. A was in severe pain; her body began shaking and she had difficulty catching her breath. Part of her body went numb and she was in such pain that she had to have her young daughter help her put her underwear on. Despite the way she was feeling, Mr. Egli then demanded to have vaginal sex with her again. Ms. A protested and begged for him to stop. However, Mr. Egli responded *Page 12 
by telling her to shut up, threatening that if she did not shut up, he would again anally penetrate her and "make it eight hundred times worse."
 {¶ 43} After reviewing the entire record, weighing the evidence and all reasonable inferences, we find that the rape verdict is not against the manifest weight of the evidence. As the trier of fact, the jury was free to believe Ms. A's version of what transpired and reject Mr. Egli's version. State v. DeHass (1967), 10 Ohio St. 2d 230, paragraph one of the syllabus; State v. Ecklin (June 9, 1995), 11th Dist. No. 94-L-077, 1995 Ohio App. LEXIS 2683, 45.
 {¶ 44} With respect to the assault offense, Mr. Egli was indicted and found guilty of R.C. 2903.13(A), which provides, in relevant part: "No person shall knowingly cause or attempt to cause physical harm to another * * *." R.C. 2901.01(A)(3) defines physical harm to persons as "any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.22(B) provides that "[a] person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."
 {¶ 45} The state presented sufficient evidence on each of the essential elements for assault from which the jury could find Mr. Egli guilty beyond a reasonable doubt. Nurse Prulhiere of the St. Thomas Hospital DOVE Unit substantiated the fact that Ms. A sustained physical harm after having vaginal, anal, and oral intercourse with Mr. Egli. She described the physical injuries Ms. A suffered as follows: abrasions and swelling to her upper right lip; redness on her neck; bruising to her right ear; abrasions to the hairline; leg and knee contusions; lacerations and bruising to the anus; and redness and *Page 13 
swelling of the vaginal area. Chief Blough also observed marks on Ms. A's neck, and when he asked Mr. Egli about these marks, Mr. Egli replied: "That's how she likes it." Ms. A's own testimony and description of how Mr. Egli hit, kick and beat her and grabbed her head and how her body began shaking and went numb is further evidence that she sustained physical harm.
 {¶ 46} It was also reasonable for the jury to conclude that Mr. Egli had the requisite mens rea to commit the crime of assault. Based upon the evidence presented, Mr. Egli certainly was aware that the manner in which he struck Ms. A and forced her to submit to vaginal and anal intercourse, and oral sex would result in physical harm and injuries to Ms. A.
 {¶ 47} We find that not only did the state carry its burden of proof and introduce sufficient evidence on each and every element for the assault offense, but his conviction is supported by the manifest weight of the evidence. There was competent, credible evidence from which the jury could have found Mr. Egli guilty of assault.
 {¶ 48} Mr. Egli's first assignment of error is overruled.
 {¶ 49} Exclusion of Prior Sexual Conduct
 {¶ 50} In his second assignment of error, Mr. Egli argues that the trial court abused its discretion in excluding evidence of specific instances of past sexual activity between himself and Ms. A. The trial court's decision to exclude such evidence was based upon the court's determination that the prejudicial nature of such evidence outweighed its probative value under the rape shield statute, R.C. 2907.02(D).
 {¶ 51} The rape shield law provides that: "Evidence of specific instances of the victim's sexual activity * * * shall not be admitted under this section unless it involves *Page 14 
evidence of the origin of semen, pregnancy, or disease, the defendant's past sexual history with the victim, or is admissible against the defendant under R.C. 2945.59 of the Revised Code, and only to the extent that the court finds that the evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value." R.C. 2907.02(D).
 {¶ 52} In deciding whether the trial court was warranted in excluding evidence of Ms. A's prior sexual history with Mr. Egli, we are mindful that "[t]he evidentiary determination of a trial court under R.C. 2907.02(D) should not be disturbed on appeal absent a showing of an abuse of discretion * * *. The abuse of discretion standard is also used when reviewing a determination by the trial court weighing the probative value of the evidence with its danger of unfair prejudice under Evid. R. 403." State v. Hardy (Oct. 10, 1997), 11th Dist. No. 96-P-0129, 1997 Ohio App. LEXIS 4588, 14-15. "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Id., citingState v. Adams (1980), 62 Ohio St. 2d 151, 157-158.
 {¶ 53} In this case, it is clear that the evidence defense counsel sought to introduce did not relate to the origin of semen, pregnancy, or disease. Rather, defense counsel sought to introduce evidence of Ms. A's prior sexual history with Mr. Egli in an attempt to show that the sexual conduct that occurred in this case was consistent with their past sexual practice and thus was consensual. Although the victim's past sexual activity with the offender is a statutory exception to the rape shield law, the court must still conduct a balancing test to decide whether it is more probative than prejudicial to *Page 15 
allow introduction of such evidence. Here, the court found that the evidence was more prejudicial than probative.
 {¶ 54} We do not find that the trial court abused its discretion in failing to allow the introduction of this testimony. "[T]he purpose of the rape shield law [is] to protect the victim from harassment and to discourage the tendency in rape cases to try the victim rather than the defendant." State v. Archibald, 11th Dist. Nos. 2006-L-047 and 2006-L-207, 2007-Ohio-4966, at ¶ 52; State v. Gardner (1979),59 Ohio St. 2d 14, 17. It was certainly within the court's discretion to exclude such evidence. In essence, Mr. Egli was attempting to impeach Ms. A's credibility or more precisely, her character for truthfulness, with extrinsic evidence that she bragged to others about engaging in violent sex.
 {¶ 55} Clearly the type of conduct the defense sought to introduce has nothing whatsoever to do with untruthful character. Evid. R. 608 specifically limits one's ability to attack the credibility of a witness with reputation evidence. Such evidence may refer only to character for truthfulness or untruthfulness. Evid. R. 608(A). Moreover, Evid. R. 608(B) specifically prohibits the use of extrinsic evidence to prove specific instances of the conduct of a witness when legitimately attacking the witness's character for truthfulness. "Extrinsic evidence" is defined in the Staff Note to Evid. R. 616: "In the impeachment context, extrinsic evidence means evidence introduced through the testimony of other witnesses. See 1 McCormick, Evidence § 36, at 118 (4th
ed. 1992)." The rule "does not provide for impeachment of reputation for truth-telling by evidence of a victim's past sexual conduct which tends to show that [the victim] may have the ability *Page 16 
to fabricate a new but fictitious story." State v. Tomlinson (1986), 33 Ohio App.3d 278, 280.
 {¶ 56} Because the prejudicial nature of such testimony could be found to have outweighed its probative nature and because the proposed method of attack on the credibility of the victim falls outside the scope of the rules of evidence, we are unwilling to find an abuse of discretion.
 {¶ 57} Mr. Egli's second assignment of error is overruled.
 {¶ 58} Ineffective Assistance of Counsel
 {¶ 59} In his third assignment of error, Mr. Egli argues that his trial counsel was ineffective. Specifically, he contends that Ms. A had made a prior rape complaint against him by filing a police report in Cuyahoga Falls, and that counsel should have questioned her about this. Since this prior rape allegation was tantamount to a prior false accusation, Mr. Egli contends that trial counsel was ineffective because he should have proffered this evidence at the rape shield hearing or at the trial itself.
 {¶ 60} In reviewing an ineffective assistance of counsel claim, the benchmark is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial court cannot be relied on as a just result." Strickland v. Washington (1984),466 U.S. 668, 686. "To successfully assert ineffective assistance of counsel, appellant must show that the attorney made errors so serious that he or she was not functioning as `counsel' as guaranteed by theSixth Amendment, and appellant must show that he or she was prejudiced by the deficient performance. In other words, appellant must show `that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A *Page 17 
reasonable probability is a probability sufficient to undermine confidence in the outcome.'" State v. Batich, 11th Dist. No. 2006-A-0031, 2007-Ohio-2305, at ¶ 42, citing Strickland at 694. In deciding whether counsel was ineffective, we presume that counsel's conduct was competent. Id.
 {¶ 61} In State v. Boggs (1992), 63 Ohio St.3d 418, the Supreme Court of Ohio held that a victim in a sexual assault case can be cross-examined about prior false accusations of rape. However, in this case, the record is silent as to whether such a prior rape accusation was in fact made. There was discussion on the record regarding a prior domestic abuse issue where Mr. Egli allegedly made threats against Ms. A. However, there is no reference that this involved a rape allegation. With respect to that domestic abuse issue, defense counsel specifically asked the court to redact any reference regarding this prior complaint, which the court agreed to do. This was obviously a trial tactic on defense counsel's part to exclude any negative references to Mr. Egli's past conduct toward Ms. A.
 {¶ 62} However, because the record contains no reference to a prior rape allegation, we cannot determine whether trial counsel's conduct was deficient. There is simply no way for this court to determine whether such a claim was made, whether trial counsel had knowledge of such a claim, or whether such evidence was available to defense counsel.
 {¶ 63} Because Mr. Egli's ineffective assistance claim is based on evidence dehors the record, Mr. Egli is still able to raise such a claim in a petition for postconviction relief and will not be barred by res judicata principles. As we stated in Schlee, "even if the issue of ineffective assistance of counsel is raised on direct appeal, *Page 18 
that issue will not be barred by res judicata in a postconviction relief proceeding if the issue could not have been determined without resort to evidence dehors the record." State v. Smith (1985), 17 Ohio St.3d 98,101, fn 1.
 {¶ 64} We overrule Mr. Egli's third assignment of error.
 {¶ 65} The judgment of the Portage County Court of Common Pleas is affirmed.
TIMOTHY P. CANNON, J., concurs with Concurring Opinion, COLLEEN MARY OTOOLE, J., dissents with Dissenting Opinion.