[Cite as *State v. Hodges*, 2020-Ohio-4693.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# ASHTABULA COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2020-A-0026** |
| ROBERT EUGENE HODGES, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Ashtabula County Court of Common Pleas, Case No. 2019 CR 00584.

Judgment: Affirmed.

*Cecilia M. Cooper*, Ashtabula County Prosecutor, and *Shelley M. Pratt*, Assistant Prosecutor, Ashtabula County Courthouse, 25 West Jefferson Street, Jefferson, Ohio 44047 (For Plaintiff-Appellee).

*James W. Armstrong*, Leipply & Armstrong, 2101 Front Street, Riverfront Centre, Suite 101, Cuyahoga Falls, Ohio 44221 (For Defendant-Appellant).

MARY JANE TRAPP, J.

{¶1} Appellant, Robert Eugene Hodges ("Mr. Hodges"), appeals from the judgment of the Ashtabula County Court of Common Pleas sentencing him to five years in prison following a jury trial in which he was found guilty of rape, a felony of the first degree, kidnapping with a sexual motivation, a felony of the second degree, and unlawful sexual conduct with a minor, a felony of the third degree.

{¶2} This case involves Mr. Hodges' sexual conduct with a 15-year-old female, who we will refer to by her initials, J.P., when he was 31 years old.

{¶3} Mr. Hodges argues that (1) there was insufficient evidence to convict him of rape, kidnapping, and unlawful sexual conduct with a minor; (2) the trial court erred by denying his Crim.R. 29 motion for acquittal of the offenses; (3) the guilty verdicts for the offenses were against the manifest weight of the evidence; and (4) the trial court committed plain error by failing to define "reckless" with respect to the age of the alleged victim when instructing the jury on the offense of unlawful sexual conduct with a minor.

{¶4} After a careful review of the record and pertinent law, we find as follows:

{¶5} (1) The state presented sufficient evidence to establish the element of "force" to support Mr. Hodges' conviction for rape. J.P.'s testimony, if believed, indicates that she expressed her lack of consent and that Mr. Hodges used physical force to make her submit to sexual conduct.

{¶6} (2) The jury's guilty verdict for rape was not against the manifest weight of the evidence. The jury chose to believe J.P.'s testimony regarding what transpired, and any inconsistencies or new details did not render her testimony so incredible as to be unbelievable. Further, the purportedly conflicting evidence does not weigh heavily against Mr. Hodges' conviction.

{¶7} (3) Since Mr. Hodges was not "convicted" of the offenses of kidnapping and unlawful sexual conduct with a minor as a result of their merger with the offense of rape, any errors with respect to those offenses were harmless.

{¶8} Thus, we affirm the judgment of the Ashtabula County Court of Common Pleas.

**Substantive and Procedural History**

{¶9}    In July 2018, J.P. was 15 years old and living with her aunt, B.K., who has a law enforcement background.  B.K. had full custody of J.P., and visitation with J.P.'s mother, J.N., was at B.K.'s discretion.

***The Alleged Offenses***

{¶10}  For about eight days during July 2018, J.P. visited her mother in Ashtabula. On the evening of July 12, her friend, Devon, picked her up to attend a party at his house in Conneaut.  At the party, J.P. smoked marijuana and "hung out."  About four or five hours later, J.P. decided to leave the party because she did not know anybody and because her best friend did not arrive.  J.P. stated that she was not familiar with Conneaut.

{¶11}  J.P. did not have a cell phone with her at the party.  She used Devon's phone to call her mother, who did not answer.  She then contacted her mother using a code word they have for emergencies.  J.N. responded but was unable to pick her up. She advised J.P. that "Dink," a friend of her boyfriend, would take J.P. home.

{¶12}  Mr. Hodges was the person referred to as "Dink."  According to J.P., she first met Mr. Hodges at a get-together she attended with her mother when she was 13 years old and was around him multiple times when she was younger.  She knew that he was close to her mother's age of 32.  Mr. Hodges was 31 years old at the time of the alleged offenses.

{¶13}  J.P. and Devon walked to a barber shop to meet Mr. Hodges.  They eventually walked to Mr. Hodges' house located at 218 Whitney Street in Conneaut, but no one was home.  Devon had to leave, so J.P. waited by herself on a concrete step until Mr. Hodges arrived about 45 minutes later.  They went into the house, and Mr. Hodges'

3

girlfriend was supposed to pick them up and take J.P. home. At this point, it was after midnight.

{¶14} According to J.P., she and Mr. Hodges watched television in the living room for about an hour. J.P. went upstairs to use the bathroom because she had started her period and she was bleeding through her pants. She looked under the sink for a tampon, and there happened to be one in there. Mr. Hodges came into the bathroom and shut the door, and J.P. backed up toward the wall. Mr. Hodges "grabbed" her arm and stated, "you know you want to." She pulled away and started crying. Mr. Hodges laughed and left the bathroom.

{¶15} After using the bathroom, J.P. went back downstairs and sat on the couch. Mr. Hodges asked to "eat [her] out" and if she "wanted to give him head." J.P. responded, "no," and Mr. Hodges again laughed.

{¶16} J.P. became anxious and asked when her ride was coming. Mr. Hodges told her that his girlfriend was on her way. Mr. Hodges continued talking about having sex. J.P. told him that she was on her period, and Mr. Hodges replied that he had condoms. She said "no," and he told her to get out of the house.

{¶17} J.P. left the house and walked down Route 20 for about 10 to 15 minutes, intending to go to Circle K and call her mother. According to J.P., she did not know the location of Devon's house.

{¶18} Mr. Hodges pulled up in his vehicle, apologized, and said he would take her home. Mr. Hodges drove her back to his house and said that his girlfriend was on her way. He and J.P. went back into the house. Mr. Hodges began touching J.P.'s hand, arm, and hair. He told her that she "looked older" than she was, although they did not discuss her actual age.

4

{¶19} Mr. Hodges gave J.P. his phone, and she unsuccessfully attempted to contact her mother, one of her mother's friends, and Devon for a ride home. She contacted her friend, Alex Filipcic ("Mr. Filipcic"), but he was unable to pick her up. J.P. did not contact her aunt because she did not want to get in trouble. J.P. gave the phone back to Mr. Hodges.

{¶20} According to J.P., Mr. Hodges "grabbed" her by her arms and put her on the couch. He then "grabbed" her shorts and took them off. J.P. took off her underwear. Mr. Hodges removed her tampon and had sex with her. Mr. Hodges eventually "grabbed" J.P. and put her on top of him on the chair. She asked him to stop, told him it hurt, and was crying. One of J.P.'s tears fell on Mr. Hodges, and he laughed about it and said she spit on him. J.P. stated that Mr. Hodges did not threaten her.

{¶21} After about 10 to 15 minutes, Mr. Hodges told her to get her things and that she could go home. Mr. Hodges then drove J.P. back to her mother's house.

{¶22} Since it was about four in the morning, J.P. had to enter her mother's house through a window. After entering, she went to sleep on her mother's couch. A few hours later, J.P.'s mother woke her up, and she told her mother what had happened. J.N. did not take any action.

### The Police Investigation

{¶23} J.P. went back to her aunt's house a few days later. In May 2019, approximately nine months after the alleged offenses occurred, J.P. told B.K. what had happened. Prior to the disclosure, J.P. was suicidal and was having difficulty with school.

{¶24} B.K. took J.P. to the Conneaut Police Department, where they filed a police report and spoke with Detective Rose, and to a doctor. B.K. also drove J.P. around the

streets of Conneaut until she recognized Mr. Hodges' house. B.K. took a picture of the house on 218 Whitney Street and sent it to the Conneaut police.

{¶25} In July, Detective Taylor Cleveland ("Det. Cleveland") of the Conneaut Police Department began investigating the matter. He set up a forensic interview for J.P. at Signature Health in Ashtabula, which he observed through closed circuit television. Det. Cleveland also went to 218 Whitney Street, spoke with the occupant, Rachel Hull, and took photographs.

{¶26} Det. Cleveland conducted an interview with Mr. Hodges. Mr. Hodges acknowledged his familiarity with J.P. and her mother but adamantly denied raping J.P. He indicated that J.P. was a willing participant in a "transactional" sexual encounter, i.e., sex in exchange for a ride home. Det. Cleveland quoted Mr. Hodges as saying, "You bet she was willing. I told her you ain't give me no head, I won't give you no ride." According to Det. Cleveland, Mr. Hodges told him that no one held a gun to J.P.'s head and that she was free to leave at any point in time.

{¶27} Det. Cleveland interviewed J.P.'s mother and attempted to locate Devon without success. He had not been made aware of J.P.'s alleged phone call with Mr. Filipcic.

### The Indictment

{¶28} The Ashtabula County Grand Jury subsequently indicted Mr. Hodges on seven counts: two counts of rape in violation of R.C. 2907.02(A)(2), felonies of the first degree (counts 1 and 2); compelling prostitution in violation of R.C. 2907.21(A)(1), a felony of the first degree (count 3); kidnapping in violation of R.C. 2905.01(A)(4)(B)(1) [sic], a felony of the second degree (count 4), with a specification pursuant to R.C. 2941.147 that he committed the offense with a sexual motivation; compelling prostitution

6

in violation of R.C. 2907.21(A)(2)(a), a felony of the third degree (count 5); unlawful sexual conduct with a minor in violation of R.C. 2907.04(A)(B)(3) [sic], a felony of the third degree (count 6); and gross sexual imposition in violation of R.C. 2907.05(A)(1)(C)(1) [sic], a felony of the fourth degree (count 7).

{¶29} Mr. Hodges pleaded not guilty to all charges. On the state's motion, the trial court issued a judgment entry dismissing, without prejudice, count 2 (rape) and counts 3 and 5 (compelling prostitution) of the indictment. The matter proceeded to a jury trial on the remaining counts.

### *The Jury Trial*

{¶30} The state presented the testimony of B.K., J.P., Mr. Filipcic, and Det. Cleveland and photographs taken at 218 Whitney Street.

{¶31} After the state rested, Mr. Hodges moved for judgment of acquittal on all counts pursuant to Crim.R. 29. The trial court granted the motion with respect to gross sexual imposition (count 7) and overruled the motion with respect to rape (count 1), kidnapping (count 4), and unlawful sexual conduct with a minor (count 6).

{¶32} The defense moved to admit one exhibit and rested.

{¶33} Following deliberation, the jury returned a verdict finding Mr. Hodges guilty on all remaining counts and the specification on count 4. The trial court ordered a presentence investigation and scheduled the matter for sentencing.

### *Sentencing*

{¶34} At the sentencing hearing, the parties agreed, and the trial court found, that the three offenses merged for purpose of sentencing, and the state elected to proceed on count 1 (rape). The trial court sentenced Mr. Hodges to a mandatory prison term of five

years with credit for 199 days, classified him as a Tier III sex offender, and assessed court costs against him.

{¶35} The trial court subsequently issued a judgment entry memorializing the guilty verdicts and sentence.

{¶36} Mr. Hodges appealed and presents the following assignments of error for our review:

{¶37} "[1.] There was insufficient evidence to convict Appellant of Rape, Kidnapping, and Unlawful Sexual Conduct with a Minor.

{¶38} "[2.] The Trial Court committed prejudicial error by not granting Appellant's Criminal Rule 29 Motion to Dismiss since there was insufficient evidence to convict Appellant of Rape, Kidnapping, and Unlawful Sexual Conduct with a Minor.

{¶39} "[3.] The guilty verdicts of Rape, Kidnapping, and Unlawful Sexual Conduct with a Minor were against the manifest weight of the evidence.

{¶40} "[4.] The trial court committed plain prejudicial error by failing to provide complete jury instructions regarding the definition of the essential element of 'reckless' regarding the age of the alleged victim, thus denying Appellant his right to due process."

**Sufficiency of the Evidence**

{¶41} We review Mr. Hodges' first and second assignments of error together.

{¶42} In his first assignment of error, Mr. Hodges asserts that there was insufficient evidence for his convictions.

{¶43} In his second assignment of error, Mr. Hodges challenges the trial court's denial of his Crim.R. 29(A) motion for acquittal. Crim.R. 29(A) states that a trial court "shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment * * * if the evidence is insufficient to sustain a conviction of such offense or

8

offenses." A motion for acquittal under Crim.R. 29(A) is governed by the same standard as the one for determining whether a verdict is supported by sufficient evidence. *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, ¶37.[1]

### Standard of Review

{¶44} "'Sufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *Black's Law Dictionary* 1433 (6th Ed.1990). "In essence, sufficiency is a test of adequacy." *Id*.

{¶45} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id*.

### Sufficiency - Rape

{¶46} Mr. Hodges was convicted of rape in violation of R.C. 2907.02(A)(2), which provides that "[n]o person shall engage in sexual conduct with another when the offender purposefully compels the other person to submit by force or threat of force."

---

1. We note that Mr. Hodges did not renew his Crim.R. 29 motion for judgment of acquittal at the close of all the evidence. However, this court has most recently held that the failure to do so does not constitute a waiver of an appellant's right to challenge the sufficiency of the evidence. *See State v. Bryant*, 11th Dist. Trumbull No. 2015-T-0100, 2016-Ohio-4928, ¶22-23.

{¶47} Mr. Hodges argues that the state did not present sufficient evidence on the element of "force" or "threat of force." He asserts that the evidence shows a "quid pro quo in which transportation to another city was offered in exchange for sex." We disagree.

{¶48} "'Force' is defined in R.C. 2901.01(A)(1) as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." According to the Supreme Court of Ohio, "[a] defendant purposely compels another to submit to sexual conduct by force or threat of force if the defendant uses physical force against that person, or creates the belief that physical force will be used if the victim does not submit." *State v. Schaim*, 65 Ohio St.3d 51, 55 (1992).

{¶49} "The force and violence necessary in rape is naturally a relative term, depending upon the age, size and strength of the parties and their relation to each other * * *." *State v. Eskridge*, 38 Ohio St.3d 56, 58 (1988), quoting *State v. Labus*, 102 Ohio St. 26, 38-39 (1921). "[T]he statute requires that some amount of force must be proven beyond that force inherent in the crime itself. *State v. Dye*, 82 Ohio St.3d 323, 327 (1998). However, the statute "requires only that minimal force or threat of force be used in the commission of a rape." *Id.* Further, R.C. 2907.02(C) provides that "[a] victim need not prove physical resistance to the offender * * *."

{¶50} J.P. testified that she had rejected Mr. Hodges sexual advances prior to leaving his house the first time. After returning, Mr. Hodges eventually "grabbed" her by her arms; "put" her on the couch; "grabbed" her shorts and took them off; removed her tampon; and "grabbed" her and put her on top of him on the chair. J.P. further testified that she asked him to stop, told him it hurt, and was crying.

{¶51} This court and others have found similar alleged conduct to constitute sufficient evidence of force.

{¶52} For example, in *State v. Williams*, 11th Dist. Portage No. 2005-P-0009, 2006-Ohio-1169, this court found sufficient evidence of force where the defendant's conduct included "putting the victim hard on the floor, taking off her shorts, and engaging in vaginal intercourse which caused her pain." *Id.* at ¶40.

{¶53} In *State v. Shannon*, 11th Dist. Lake No. 2002-L-007 & 2002-L-008, 2004-Ohio-1669, this court found sufficient evidence of force where "the state presented evidence showing appellant, a twenty-five-year-old male, caused the victim, a fifteen-year-old girl, to lay down by laying on top of her and, then, proceeded to have intercourse with the victim after she conveyed her lack of consent." *Id.* at ¶95.

{¶54} In *State v. Rucker*, 8th Dist. Cuyahoga No. 108359, 2020-Ohio-2715, the Eighth District Court of Appeals found sufficient evidence of force that included sexual conduct despite the victim's "repeated statements telling [the defendant] to stop or that she did not want to engage in any sexual activity with [the defendant]." *Id.* at ¶11.

{¶55} In *State v. Davis*, 8th Dist. Cuyahoga No. 98145, 2012-Ohio-5179, the Eighth District found sufficient evidence of force that included the defendant's removal of the victim's clothing and having sexual intercourse with her and the victim's testimony that she told the defendant to stop. *Id.* at ¶2.

{¶56} And in *State v. Whitt*, 8th Dist. Cuyahoga No. 82293, 2003-Ohio-5934, the Eighth District found sufficient evidence of force that included the victim's testimony that the defendant removed her dress and underwear without her consent. *Id.* at ¶22.

{¶57} Mr. Hodges does not dispute J.P.'s cited testimony but instead points to other testimony that purportedly establishes a quid pro quo transaction of sex in exchange for a ride.

{¶58} Mr. Hodges' arguments involve the weight of the evidence rather than its sufficiency. As this court has recognized, a claim of insufficient evidence invokes an inquiry about due process. (Citations omitted.) *State v. Schlee*, 11th Dist. Lake No. 93-L-082, 1994 WL 738452, *4 (Dec. 23, 1994). It raises a question of law, the resolution of which does not allow the court to weigh the evidence. (Citations omitted.) *Id*. Therefore, we will address Mr. Hodges' arguments in our discussion of his third assignment of error.

{¶59} Mr. Hodges also argues that the state has created a new theory of "psychological force" to justify his "unlawful conviction."

{¶60} In its appellate brief, the state argues that Mr. Hodges "used psychological force and fear to compel J.P. into having sexual relations with him," citing the Supreme Court of Ohio's decision in *Eskridge*.

{¶61} In *Eskridge*, the defendant was convicted of raping his four-year-old daughter. *Id*. at 56. In finding that there was sufficient evidence of force, the court stated as follows:

{¶62} "We also recognize the coercion inherent in parental authority when a father sexual abuses his child. * * * Force need not be overt and physically brutal, but can be subtle and psychological. As long as it can be shown that the rape victim's will was overcome by fear or duress, the forcible element of rape can be established." *Id*. at 59 (Citations omitted.)

{¶63} This court has held that the "relaxed standard announced in *Eskridge* should be limited to relationships involving the parent, stepparent or adoptive parents of the victim." *State v. Payton*, 119 Ohio App.3d 694, 702 (11th Dist.1997). "Accordingly, when faced with a relationship other than a parent-child or a like relationship, more should

12

be required to find force with the parent-child relationship, due to the absence of implicit threat of punishment for disobedience." *Id.* at 702-03.

{¶64} The Supreme Court of Ohio subsequently applied the *Eskridge* standard to persons "in a position of authority over a child under thirteen." *Dye* at 329.

{¶65} The evidence in the record does not support an application of the *Eskridge* standard. As set forth above, however, J.P.'s testimony, if believed, indicates that she expressed her lack of consent and that Mr. Hodges used *physical* force to make her submit to sexual conduct. Accordingly, we find that the state presented sufficient evidence to establish the element of "force" to support Mr. Hodges' conviction for rape.

### Sufficiency - Kidnapping; Unlawful Sexual Conduct with a Minor

{¶66} Although the jury rendered guilty verdicts for the offenses of kidnapping and unlawful sexual conduct with a minor, the trial court found that they merged with the rape offense for purposes of sentencing. The state elected to proceed to sentencing on the rape offense.

{¶67} A conviction requires both a guilty verdict and a sentence. *State v. Whitfield*, 124 Ohio St.3d 319, 2010-Ohio-2, ¶12. Since the trial court imposed no sentences for kidnapping and unlawful sexual conduct with a minor, Mr. Hodges was not convicted of these offenses. *See State v. Macko*, 11th Dist. Lake No. 2016-L-022, 2017-Ohio-253, ¶27. Courts have held in merged offense cases that where there is sufficient evidence supporting the conviction of the state's elected offense for sentencing, it is harmless error if there was insufficient evidence to support the offenses that merged with the elected offense. *State v. Henderson*, 7th Dist. Mahoning No. 15 MA 0137, 2018-Ohio-5123, ¶9 (collecting cases).

13

{¶68} Since there was sufficient evidence supporting Mr. Hodges' conviction for rape, any error regarding the merged offenses of kidnapping and unlawful sexual conduct with a minor is harmless.

{¶69} Mr. Hodges' first and second assignments of error are without merit.

**Manifest Weight of the Evidence**

{¶70} In his third assignment of error, Mr. Hodges asserts that the jury's guilty verdicts were against the manifest weight of the evidence.

***Standard of Review***

{¶71} "[W]eight of the evidence addresses the evidence's effect of inducing belief." *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, ¶25, citing *Thompkins* at 386-87. "In other words, a review court asks whose evidence is more persuasive—the state's or the defendant's?" *Id.*

{¶72} "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether in resolving conflicts, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that a new trial must be ordered." *Thompkins* at 387, quoting *State v. Martin,* 20 Ohio App.3d 172, 175 (1st Dist.1983).

{¶73} "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." *Id.* "The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Id.*, quoting *Martin* at 175.

### Manifest Weight - Rape

{¶74} After reviewing the record, we find that the state presented competent, credible evidence from which the jury could determine that Mr. Hodges was guilty of rape.

{¶75} Because there was no dispute that Mr. Hodges engaged in sexual conduct with J.P., the issues for the jury to decide were whether it was consensual and whether he used force to make J.P. submit. *See State v. Egli*, 11th Dist. Portage No. 2007-P-0052, 2008-Ohio-2507, ¶40. In essence, this involves a matter of credibility. *Id.*

{¶76} "[T]he credibility of the witnesses is primarily for the trier of the facts." *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. "The choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact." *State v. Awan*, 22 Ohio St.3d 120, 123 (1986). A fact finder is free to believe all, some, or none of the testimony of each witness appearing before it. (Citation omitted.) *State v. Fetty*, 11th Dist. Portage No. 2011-P-0091, 2012-Ohio-6127, ¶58.

{¶77} Further, "[w]hen reviewing a judgment under a manifest-weight-of-the-evidence standard, a court has an obligation to presume that the findings of the trier of fact are correct. * * * This presumption arises because the [fact-finder] had an opportunity to view the witnesses and observe their demeanor in weighing the credibility of the witnesses." (Citations omitted.) *Id.* at ¶59.

{¶78} In this case, the defense vigorously challenged J.P.'s credibility. On cross-examination, J.P. acknowledged that her trial testimony contained inconsistencies and new details when compared to her prior statements to authorities. During its closing argument, the defense highlighted these inconsistencies and accused J.P. of committing perjury with respect to her alleged phone conversation with Mr. Filipcic. The defense also

asserted that J.P. "pulled the rape card" to obtain sympathy from her aunt and to avoid punishment for her bad behavior at home and at school.

{¶79} In addition, while Mr. Hodges exercised his constitutional right not to testify, the defense read portions of his statement to Det. Cleveland during cross-examination, where he adamantly denied raping J.P. and described their sexual encounter as consensual.

{¶80} The jury was in the best position to view J.P and determine her credibility. Despite the defense's best efforts, the jury chose to believe J.P.'s testimony regarding what transpired. Given the totality of the evidence, we cannot say that any inconsistencies or new details rendered J.P.'s testimony so incredible as to be unbelievable.

{¶81} We also do not believe that the purportedly conflicting evidence weighs heavily against Mr. Hodges' conviction.

{¶82} For instance, Mr. Hodges asserts that he allowed J.P. to use his phone to obtain alternative transportation. However, this occurred after J.P. returned to Mr. Hodges' house based on his promise of a ride home. Further, J.P. testified that she was unable to contact her mother, a friend of her mother, and Devon, and that while she successfully contacted Mr. Filipcic, he was unable to pick her up. As a result, she had returned the phone to Mr. Hodges prior to the sexual conduct.

{¶83} Mr. Hodges also asserts that J.P. was free to leave his house at any time. Det. Cleveland testified that Mr. Hodges made this statement during his interview. During its cross-examination of J.P., however, the defense asked, "You were free to go at any time, correct?" J.P. answered, "I mean *he held me*, but he never *said* I couldn't leave."

16

(Emphasis added.) Thus, the evidence does not indisputably establish that J.P. was free to leave "at any time."

{¶84} Mr. Hodges asserts that J.P. could have easily returned to her friend Devon's house located across the street. However, the location of Devon's party was not definitively established at trial. Det. Cleveland testified that Devon had multiple addresses within the city of Conneaut. One such address was 217 Whitney Street, which Det. Cleveland testified was located across the street from Mr. Hodges' residence. A more recent address was located on a different street.

{¶85} Further, J.P. testified that she was unfamiliar with Conneaut and that she and Devon had not taken a direct route to Mr. Hodges' residence. Rather, they walked after dark from Devon's house to a barber shop and then ultimately to Mr. Hodges' residence.

{¶86} Mr. Hodges also questions why J.P. did not call her aunt, who has a law enforcement background, or call 911 if she felt she was in a compromising position. However, J.P. testified that she did not want to get in trouble and was scared her aunt would not allow her to see her mother again.

{¶87} Finally, Mr. Hodges asserts that the "most effective manner to curtail" Mr. Hodges' "sexual advances" would have been for J.P. to tell him she was only 15 years old. However, J.P. testified that Mr. Hodges told her she looked older than she was, which suggests he was aware of her young age.

{¶88} At most, the above testimony demonstrates that J.P. took efforts to attempt to remove herself from the situation. The fact that she was not successful or did not pursue all available options does not compel a conclusion that she consented to subsequent sexual conduct with Mr. Hodges.

17

**{¶89}** After reviewing the entire record and weighing the evidence and all reasonable inferences, we find that the jury did not clearly lose its way, nor does Mr. Hodges' conviction for rape reflect a manifest miscarriage of justice.

### *Manifest Weight - Kidnapping; Unlawful Sexual Conduct with a Minor*

**{¶90}** Since Mr. Hodges was not "convicted" of kidnapping and unlawful sexual conduct with a minor as a result of merger, we need not address whether the guilty verdicts on these offenses were against the manifest weight of the evidence. *See Henderson, supra* at ¶9; *State v. Springer*, 8th Dist. Cuyahoga No. 104649, 2017-Ohio-8861, ¶15, *abrogated on other grounds*, *State v. Davis*, 159 Ohio St.3d 31, 2020-Ohio-309. Our conclusion that Mr. Hodges' rape conviction was not against the manifest weight of the evidence necessarily renders harmless any error with respect to these offenses. *See Springer* at ¶15.

**{¶91}** Mr. Hodges' third assignment of error is without merit.

### Jury Instruction

**{¶92}** In his fourth and final assignment of error, Mr. Hodges asserts that the trial court erred by failing to define "reckless" when instructing the jury on the offense of unlawful sexual conduct with a minor.

**{¶93}** As Mr. Hodges acknowledges, he failed to object to this jury instruction at trial and thus waived all but plain error. *See State v. Cunningham*, 105 Ohio St.3d 197, 2004-Ohio-7007, ¶56; Crim.R. 30(A).

**{¶94}** Further, since Mr. Hodges was not "convicted" of unlawful sexual conduct with a minor as a result of merger, any error in not instructing the jury on the definition of "reckless" would be harmless error. *See State v. Cook*, 11th Dist. Lake No. 2016-L-079,

18

2017-Ohio-7953, ¶64; *State v. Franks*, 8th Dist. Cuyahoga No. 103682, 2016-Ohio-5241, ¶22.

{¶95} Mr. Hodges' fourth assignment of error is without merit.

{¶96} For the foregoing reasons, the judgment of the Ashtabula County Court of Common Pleas is affirmed.


TIMOTHY P. CANNON, P.J.,

THOMAS R. WRIGHT., J.,

concur.